## No. XXII.

### ISABELLA M. ANDREWS v. EDMUND ANDREWS.

(See Note 22.)

*Appeal from Brazoria County.*

HANSFORD, JUSTICE.—The transcript of the record from the court below (Brazoria) exhibits the following facts: At the fall term of the District Court of Brazoria County, Isabella M. Andrews commenced her suit against her husband, Edmund Andrews, praying to be divorced a vinculo matrimonii, and also praying for alimony pendente lite. That part of the petition of the plaintiff which prays for alimony pendente lite was granted at the said term of the court, and it was ordered, adjudged and decreed by the court that Edmund Andrews, the husband of defendant, pay to the attorney of record of Isabella, the sum of $500, and that on the first day of January, 1840, he pay the further sum, etc., during the pendency of the suit for divorce. The sheriff of Brazoria County made his return upon this order, or decree for alimony pendente lite, on the first day of October, 1840, by which it appears that the defendant refused to pay the several sums as ordered and decreed by the district court, and also refused to point out any property to be sold by the sheriff to be applied in conformity with the order or decree of the court.

At the October term, 1840, of the district court for said county, a motion was made by the counsel of Isabella for an attachment against the body of Edward Andrews for contempt, and to compel the performance of said decree for alimony pendente lite, which motion was overruled and refused, and to this decision the counsel for Isabella Andrews excepted and appealed to this court.

Whether the Supreme Court can entertain jurisdiction of this cause is, we think, the only question presented now for our consideration. As the decree was for alimony pendente lite, and consequently interlocutory, it would be manifestly incongruous and unseemly, to say the least of it, for the Supreme Court to entertain jurisdiction of and adjudicate upon the interlocutory decrees of an inferior court, while the substantive or original action upon which such decree is founded shall still be pending in the court below.

In Metcalf's case, 11 Coke, 38, it was decided that a writ of error would not lie in a judgment quod computet, because it was not a final decision; and it seems to be a rule of law, as well settled as any other rule, that a writ of error will lie only in cases where the judgment is

---

berry v. Swann, 12 T. C. A., 66, 73. Act of February 2, 1858 (Gammel's Laws of Texas, vol. 4, p. 968), dispensed with the use of seals on all private instruments, except contracts of corporations. This statute with the amendment of April 28, 1873 (Gammel's Laws of Texas, vol. 7, p. 503), constitute Rev. Stats., 1895, art. 4862. Harris v. Cato, 26 T., 338; Wimbish v. Holt, 26 T., 673; Read v. Levy, 30 T., 738; Courand v. Vollmer, 31 T., 397; Bernhard v.

technically ideo consideratum est. Field, a writer of the greatest accuracy and of high celebrity, states the rue in the words of Coke, that there must be a final judgment, or an award in the nature of a judgment, or else a writ of error will not lie. 2 Tidd, 1062. These expressions are broad and it must be admitted are clearly opposed to the idea of a superior court entertaining jurisdiction and trying questions of mere interlocutory proceedings of inferior tribunals. Again, "A writ of error," says Lord Coke, "lieth when a men is grieved by an error in the foundation, proceeding, judgment or execution; but without a judgment, or an award in the nature of a judgment, no writ of error doth lie, for the words of the writ are 'si judicium redditum sit,' and that judgment must be regularly given by judges of record." Coke upon Littleton, p. 288. And we hear Lord Holt thus speak in delivering his opinion in the case of Grenwett v. Burwell, 1 Salkeld: "A writ of error will not lie upon a conviction and imprisonment for contempt." And we hold the converse to be equally true and based upon the soundest logic, that if a writ of error will not lie upon a conviction and imprisonment for contempt, it can not lie for the bare refusal of a court to punish for contempt. This would be too great an absurdity for any man of common understanding to support.

We shall quote but one other authority and then rest this case upon the general principles of the common law to support and confirm our conclusions. Chancellor Kent says: "A writ of error will not lie upon an interlocutory judgment in an action of account, because it is an award, as that an assize should be taken, or a writ of inquiry issued, or a partition be made. It is not a final and definitive judgment in a cause; and error only lies on a judgment in which all the matter in the original cause of action is determined. It would produce infinite vexation to the courts and oppression to suitors, if error lay on any other than final judgment upon the merit of the cause."

The same doctrine in relation to the writ of error applies with equal force to appeals. Under our judicial system, an appeal is a concurrent mode with a writ of error in removing a cause from an inferior to a superior tribunal, a mode pointed out by the Constitution. And it is very certain that the same reasons why a writ of error will not lie, until a final determination of a cause in the court below, apply with equal if not with greater force to an appeal. And our own statute is explicit on this subject. In the third section of the act creating the Supreme Court, we have the following language: "And the said Supreme Court shall have jurisdiction over and hear and determine all manner of pleas,

De Forrest, 36 T., 518; Clayton v. Mooring, 42 T., 182. Under the statute of 1858 and the present law, the following instruments are valid without seal: (a) Appeal bonds. Russell v. McCampbell, 29 T., 31; Read v. Levy, 30 T., 738; Hart v. Kanady, 33 T., 720; Boney v. Waterhouse, 35 T., 178. (b) Attachment bonds. Bernhard v. De Forrest, 36 T., 518 (overruling Read v. Levy, 30 T., 738; Courand v. Vollmer, 31 T., 397; Hart v. Kanady, 33 T., 720); Gasquet v. Collins, 57 T., 340. (c) Certiorari and sequestration bonds. Courand v. Vollmer, 31 T., 397; Clayton v. Mooring, 42 T., 182; Tompkins v. Toland, 46 T., 584. (d) Appointment of substitute trustee. Jacobs v. Mildred, 53 T., 72; Cheveral v. McCormick, 58 T., 440. (e) Official bond of county treasurer

plaints, motions and controversies, civil and criminal, which may be brought before it by appeal, or other legal process, from any other court in this Republic, which may be cognizable in said Supreme Court, according to the Constitution and laws; provided that no appeal shall be granted, nor shall any cause be removed into the Supreme Court, in any manner whatever, until after final judgment or decree in the court below, except in cases expressly provided for by law." The meaning of the proviso in this section surely can not be mistaken, and in the case under consideration the motion was incidental to a decree, which decree was itself pendente lite, or it was incidental to another action. It would create intricate confusion in judicial proceedings and greatly oppress suitors if such a practice were to prevail. Reason forbids it. The whole tenor of the common law is against it, and our statutes forbid it. It is then our opinion that this court can not entertain jurisdiction of this cause, and it is accordingly dismissed.

*Dismissed.*

Judges Hemphill, Scurry, Baylor and Terrell say: "We concur in the result, but not in the entire opinion."

## No. XXIII.

### C. J. O'CONNOR v. A. N. VAN HOMME.

(See Note 23.)

*Appeal from Brazoria County.*

TERRELL, JUSTICE.—Van Homme brought his action in the District Court for the County of Brazoria against O'Connor to recover the value of work and labor done and performed by the plaintiff, Van Homme, upon a house built by him for the defendant O'Connor.

The plaintiff declared upon a special agreement and likewise upon a quantum meruit. The case was submitted to a jury, who returned the following verdict: "We the jury in this case find for the plaintiff four hundred and ninety-one dollars." Upon this verdict the court rendered the following judgment: "It is therefore considered by this court, ordered and decreed, that the plaintiff recover of the defendant the sum of four hundred and ninety-one dollars, with interest thereon, at eight per cent per annum, from the thirtieth day of October, 1840, until paid, and the costs of this suit." A motion for new trial was made by defendant's counsel upon the grounds "that the verdict of the jury was contrary to law, contrary to the evidence, and not supported by the contract of the parties." Which motion being overruled by the court, the defendant appealed to this court.

In support of the appeal it is urged that the verdict of the jury was not warranted by the contract sued on, and that it was contrary both to

and county scrip. De Wees v. Colorado County, 32 T., 570; Parker County v. Courts, 2 U. C., 398. Written contracts of corporations should be under cor-

the law and the evidence. To determine these points, we must look to the contract or agreement sued on and the testimony given at the trial. By the terms of the contract the plaintiff, Van Homme, bound himself (under a penalty of $500) to perform certain work therein specified upon a house for O'Connor, the defendant—which work he was to complete by the first day of June, 1839. And the defendant, O'Connor, bound himself (under a like penalty) to make to the plaintiff a title to the one-half or one-fourth of a league of land, and also to pay the plaintiff $150 in the promissory notes of the government, etc. The statement of facts shows that according to the proof the plaintiff did not complete the work within the time specified in the agreement; he can not therefore recover upon the writtn contract. The verdict of the jury, however, is evidently founded upon the demand of a quantum meruit. We must therefore direct our inquiry to the question whether this finding is supported by the testimony? To authorize an abandonment of the written contract declared upon, and a finding upon a quantum meruit, there must have been some new contract between the parties—some new agreement, either written or verbal between them; or there must have been some default on the part of the defendant which put it out of the plaintiff's power to comply with the written agreement on his part, or excused him from its performance. It is a well settled principle in the law of contracts that if A undertakes to perform certain work for B in a particular manner, or by a specified time, and B, by some act of his, put it out of the power of A to comply with the contract as made, B shall not be permitted to take advantage of his own wrong and force A to a specific performance; but A shall recover the value of his labor. In support of this position, numerous authorities might be cited, if necessary. In Chitty on Contracts, page 169, it is laid down: "If a man declare upon a special agreement, and likewise upon a quantum meruit, and at the trial prove a special agreement, but different from the one laid, he can not recover on either; but if he prove a special agreement, as laid, and the work done, but not pursuant to such agreement, he shall recover upon the quantum meruit, for otherwise he would not be able to recover at all." To the same point see Bul. N. P., 139; 2 Starkie, 95.

In Lirmingdale v. Livingston, 10 Johnson, 36, the Supreme Court of New York say: "It is (in Bul. N. P.) admitted to be now the rule, that if there be a special agreement, and the work be done, but not in accordance with it, the plaintiff may recover upon a quantum meruit," etc. And Lord Mansfield ruled, in Harris v. Oke, "that when the evidence would support a general count (supposing no special agreement

porate seal, but the ancient and technical rule that a corporation could act and speak only by its corporate seal is obsolete with us. Shropshire v. Behrens, 77 T., 275; Gas Co. v. Harber, 1 App. C., sec. 1123. Where an agent makes a contract under seal, without disclosing his agency, the party with whom he contracts can not elect to hold the undisclosed principal upon the contract. This principle is not changed by our statute. Rev. Stats., 1895, art. 4862; Sanger v. Warren, 91 T., 472. A contrary rule seems to be announced in Rutherford v. Montgomery, 14 T. C. A., 319, 323.

laid) the plaintiff may recover upon it, though there be a special agreement laid, whether he attempt to prove it or not." These decisions carry the principle even further than the general propositions which we have laid down above for the government of this case. We will now apply the facts to the principles laid down, and see whether the finding of the jury was contrary to law and contrary to evidence. According to the "statement of facts" contained in the record, the defendant O'Connor was to furnish the lumber for the building of the house. Carman, a witness called by plaintiff, proved that he once heard Van Homme complain that he had not a sufficiency of shingles to cover the house—that at that time there was a great scarcity of lumber, and it was difficult to obtain, etc.; he did not know, however, that there was not a sufficiency to finish that house, etc. Peter Latimer was also examined for the plaintiff, and stated among other things, he had often seen the plaintiff at work on the house referred to by the first witness, both before and after the 1st day of June, 1839. He stated that in the month of June or July, 1839, he heard Van Homme, *on several occasions,* complain to O'Connor that the *necessary lumber* was not furnished to do the work. In June or July, Van Homme called on O'Connor in presence of witness to furnish shingles to cover the house; and witness knew they were wanted for that purpose. There was a great scarcity of lumber in the town at the time the work was going on, etc. There was a good deal of contradictory testimony in the case. Pilkington, a witness called for the defendant, stated that O'Connor did a considerable portion of the work that was done to the house, and that before Van Homme began the work, O'Connor had nearly prepared the frame to be raised; that the materials (with the exception of the rafters) for building the house were prepared and collected nearly twelve months before Van Homme commenced the work; that Van Homme was frequently working for other people, when he had a sufficiency of materials before him, etc.; that he had frequently heard O'Connor request Van Homme to proceed to finish the house, and that Van Homme neglected to do so. That after the 1st of June, O'Connor told Van Homme if he would proceed and finish the house, he would not exact from him the forfeiture; that in August Van Homme said he had not time to work any longer, and left for Austin, etc. E. M. Pease, another witness called on the part of the defendant, sustained Pilkington in the most material statements made by him.

The question then recurs upon this statement of facts: Does the evidence sustain the jury in the verdict they have rendered? That it is variant, and in some degree contradictory, can not be denied. It is

---

**Note 16.**—Cayce v. Horton and Clements, p. 405.

At common law, the seal is an absolute requisite to the validity of a bond. Cayce v. Curtis, Dal., 403; Sloo v. Powell, Dal., 467. It is unknown to the civil law and not essential to the validity of obligations and other instruments. Cayce v. Curtis, Dal., 403; Cayce v. Horton, Dal., 405; Sloo v. Powell, Dal., 467; Foster v. Champlin, 29 T., 22. The common law term "bond" has never been adopted in this State and it is not necessary for bonds to have private

not for the court to attempt to reconcile these contradictory statements, or to give the preference in point of credibility to one set of witnesses over the other. That is the sole province of the jury—they have exercised that privilege, and it is not for this court to say, in the absence of all grounds for the assertion, that the jury have mistaken the facts or placed a wrong estimate upon the credibility or the legal effect of the testimony. If the jury gave full credence to the testimony of the witnesses Carman and Latimer, they prove the fact conclusively that O'Connor put it out of the power of Van Homme to comply with his contract by failing to furnish the necessary materials to finish the house by the time specified in the agreement. Both those witnesses say, that in the month of June or July (which must have been after the first of June) they heard Van Homme complain of the want of shingles to cover the house. If he had not furnished them some time in the month of June or July, it is conclusive that he had not furnished them before *the first of June;* consequently, it was put out of the power of the plaintiff to comply with the contract by the act of the defendant himself. Therefore the special agreement was no longer subsisting or in force between them, but had been put an end to by the conduct of the defendant himself, in failing to furnish the necessary materials for the building. Consequently the plaintiff had the right to abandon his written contract and rely upon a quantum meruit.

But even if the plaintiff had failed to perform his part of the obligation, the defendant by his subsequent conduct waived all the legal advantages of that failure. If he intended to rely upon a breach of covenant on the part of the plaintiff, it was his duty immediately to have notified the plaintiff of that fact; and not to have suffered him to continue in his employ through the months of June, July and part of August ensuing, which it is in proof he did do; and by the defendant's acquiescence in which, he deprived himself of all the benefits he might have derived from the plaintiff's failure to comply with his part of the contract; and by which he, tacitly at least, created a new obligation upon himself to pay to the plaintiff whatever his labor was reasonably worth.

The jury have said that labor was worth $591. One of the witnesses, a carpenter, too, said it was worth five or six hundred. Under all the circumstances, therefore, we do not think it right to disturb the verdict of the jury, and consequently we affirm the judgment of the court below with costs.

*Affirmed.*

---

seals. Foster v. Champlin, 29 T., 22; Courand v. Vollmer, 31 T., 397. Under Act of February 5, 1840 (Gammel's Laws of Texas, vol. 2, p. 327), providing that a scroll should take the place of a seal, provided it be recognized in the body of the instrument by the person making it, the recognition was not required to be in any specific terms. The use of any words in the body from which recognition could be fairly inferred, was sufficient. Flemming v. Powell, 2 T., 225; English v. Helms, 4 T., 228; Read v. Levy, 30 T., 738. The first section of Act of 1840 was restraining, and confined to instruments for conveyance of estates of inheritance or freehold or for a term of more than

## No. XXIV.

### WM. L. HALL v. T. J. ALLCORN.

#### (See Note 24.)

*Appeal from Brazoria County.*

HEMPHILL, CHIEF JUSTICE.—This was an action brought by the appellee on a note of hand of which the following is a copy: "$2260. On or before the twenty-sixth of February next, 1838, we promise to pay Thomas J. Allcorn, administrator of the succession of Elijah Caple, deceased, or bearer, two thousand two hundred and sixty dollars, in good current bank notes, being the amount of property purchased by Andrew Robinson, at the sale of the effects of the said estate, on the 26th of August, in conformity with a decree of the honorable judge of probate in and for the county of Harrisburg. (Signed) A. Robinson, Jr., Wm. Barrett, T. J. Hall, Wm. Sims Hall. Live Oak District, September 6, 1837."

Judgment was rendered against the defendants, *"and each of them,* jointly and severally, for the sum of two thousand two hundred and sixty dollars," or the entire amount of the note sued on. An appeal has been taken therefrom, and we are asked to reverse the same on the ground that the note on which the suit is brought is an obligation by which each one who bound himself was bound only for his equal portion thereof and the judgment is rendered against them, jointly and severally, each one for the whole.

At the period of the execution of this note the laws of Spain were the common law of this country and afforded the rule by which this contract must be regulated. The question then arises whether this would be considered under that system of laws as a joint obligation or one in solido. For all the purposes of this cause it will be sufficient to define a joint obligation (under the laws which formerly governed the country) to be one where several persons join in one contract to do the same thing; and an obligation in solido to be one where several persons obligate themselves by the term in solido, or other expressions which clearly show that they intend that each one shall be bound to perform the whole of the obligation. The laws of Louisiana are analogous to those of our own system on this subject, and the decisions of their tribunals may justly be regarded as entitled to high consideration.

It is an established principle in both systems that solidarity is never

---

five years, and the intent to seal was sufficient, if expressed in any part of the instrument not within the purview of this section. English v. Helms, 4 T., 228; Clayton v. Pridgen, 8 T., 308; Conner v. Autrey, 18 T., 427; Muckleroy v. Bethany, 23 T., 163; Muckleroy v. Bethany, 27 T., 551; Richarz v. Wolcken, 34 T., 102. Under Act of 1840, contracts to transfer land certificates and headright claims, were not required to be under seal. Randon v. Barton, 4 T., 289; Bledsoe v. Cains, 10 T., 455. It was not necessary for an obligation to pay money, nor its assignment, to be under seal. Durst v. Swift, 11 T., 273; Jones v. Holliday, 11 T., 412; Holman v. Criswell, 13 T., 38. Nor was it

to be presumed. See 12 Martin, 316. And it is equally well established that the words in a note or obligation, "we promise," make a joint obligation and not one in solido. See Mayor and Alderman v. Ripley, 5 La., 122; 3 La., 596, 597. The rule of law in relation to obligations of this description is expressed by a Spanish authority in the following terms: "Where two persons are bound simply or severally (simplemente), each is considered only bound for the half, unless it shall be expressed that they have bound themselves in solidum, and each separately; for then each may be sued for the whole. See 1 White's Recopilacion, p. 152.

On consideration of the same principles of law, and the authorities referred to, it is manifest that the judgment of the court below is erroneous. Instead of being in solido, or against each of the defendants separately for the whole amount of the note, it should have been entered for his respective share thereof.

It is therefore ordered and decreed that the judgment of the court below be reversed and set aside; and this court proceeding to render the judgment which should have been entered by the court below, it is ordered and decreed by this court that the plaintiff recover of each of the said defendants his respective and equal share of the said obligation, with interest on the said portion as the law directs, and the appellant recover his costs expended in this court.

*Reversed and rendered.*

## No. XXV.

### H. AUSTIN v. W. C. WHITE & Co.

#### (See Note 25.)

*Appeal from Brazoria County.*

HUTCHINSON, JUSTICE.—Austin filed his petition or bill against White & Co., alleging that on May 4, 1840, they recovered in the court below, against him, $410.09, with costs; that execution thereon issued; that Austin designated to the sheriff 500 acres of land worth $2 per acre, and 1000 acres of land more, to be taken in execution according to the Act of January 26, 1839, section 4; that the sheriff thereupon illegally levied also on 3328 acres more, not designated; that he advertised the whole for sale on twenty-nine days' notice, which notice was of the 9th of June; that the obligation was made in view of a sale on thirty days' notice according to that act; that nevertheless the sheriff was about to proceed under the Act of February 5, 1840, allowing a sale on twenty days' notice, contrary to the Constitution; wherefore, the bill prays an injunc-

---

necessary for a contract to sell land to be under seal. Miller v. Alexander, 8 T., 36; Holman v. Criswell, 13 T., 38; Fisk v. Miller, 13 T., 224; Eckhart v. Reidel, 16 T., 62; Martin v. Weyman, 26 T., 460; Courand v. Vollmer, 31 T., 397; Wright v. Lancaster, 48 T., 250, 256; Downs v. Porter, 54 T., 59, 64. A deed without seal or scroll was admissible in evidence to show equitable title in vendee, and deed was entitled to record under section 7 of Act of 1840.

tion, etc. The injunction was granted; but at October term, 1840, the court dissolved the injunction and decreed the costs against the plaintiff.

This decree was in effect definite. Whether the subject matter of complaint was cognizable in chancery, or on the contrary was more properly the object of the action of the court in the common form by supersedeas, whereby the court might not only correct errors in its final process, but control illegal or oppressive proceedings of its sheriff, need not be here decided; for taking the matter to be cognizable in equity, it is not sufficient to justify an injunction. It was competent for Congress to alter the remedy, as was done by the Act of 1840, prescribing twenty instead of thirty days' notice for an execution sale. The clause in the Constitution referred to in the bill is in no degree invaded or violated. The laws of the land existing at the date of a contract do not enter into the contract so as to form portion and essence of it, but will be the criterion to define its scope and obligation. Its obligation is to do, or forbear, according to the engagement or stipulation. The remedy to redress a breach of it in force at its date may be altered or modified according to the will of the Legislature, so that a full remedy of some sort be provided. This doctrine is so well established as to render a reference to authority superfluous.

The bill only intimates a step *toward* oppression in the officer—an excessive levy on lands—and the relief sought is to limit him to a less quantity. We can not now know that the officer at the sale would have contravened the law. The law and his oath to observe it require him to sell each tract separately until satisfaction is obtained; and we can not anticipate that he would have violated those sanctions.

This cause coming on to be heard on the transcript of the record herein in the District Court of Brazoria, and it being inspected, because it seems to the court here that there is no error in the decree below, it is therefore considered by the court here that the same be affirmed; and that the appellees recover of the appellant their costs in this court expended.

*Affirmed.*

### No. XXVI.

### WARREN D. C. HALL v. JAMES A. E. PHELPS.

#### (See Note 26.)

*Appeal from Brazoria County.*

HUTCHINSON, JUSTICE.—On the 23d July, 1838, Phelps instituted suit against Hall. In his petition, it as alleged that on the 16th August, 1824, a grant issued to him from the Mexican government for a league of land called the Orozimbo league, on the west bank of the

though not under seal. Miller v. Alexander, 8 T., 36; Saunders v. Hartwell, 61 T., 679, 686; Tom v. Sayers, 64 T., 339; Frost v. Wolf, 77 T., 455. Act of February 3, 1841 (Gammel's Laws of Texas, vol. 2, p. 608), providing that "when a husband and his wife have sealed," etc., was not applicable to sales of personal property. Stooksberry v. Swann, 12 T. C. A., 66, 73. Act of Feb-

Brazos, being number 3 above the league of Martin Varner; that thereon he erected a dwelling, tenements and improvements, occupying it with his family, composed of himself, a wife, children and slaves, and cultivating the same until August, 1831—having in all things performed the conditions of the grant to him as a colonist; that on the 13th of that month, being himself absent with his wife on a visit to a child in the United States, having left his slaves and his overseer in full possession, Hall, with violence and without any right or authority, expelled the overseer and the slaves from the dwelling and tenements they occupied, driving them to some distant huts on the land; and about the 6th of the November following he in like manner drove them wholly from the land, putting out of the inclosures the household furniture, etc., leaving the same to be wasted and destroyed, and took entire possession of the dwelling, tenements and premises, and continued with force to occupy until March following; that meantime Phelps returned, sought restoration of his estate, but it was withheld until after an agreement was extorted from him to convey 1000 acres on the lower part of the league, in consideration of being restored to possession of the residue—and also a conveyance of the 1000 acres accordingly. Such is an outline of the prolonged injury, which is circumstantially stated in the petition. It is averred that owing to the distracted condition of the country in regard to the administration of justice, and the revolution that intervened, the suit had been delayed. General damages for the tortious consumption, injury and destruction of personal property and the provender of the crop of 1832, are demanded; and it is prayed that the deed for the 1000 acres may be brought in and canceled and plaintiff quieted, etc.

On the 18th of March, 1840, Hall answered, demurring to the petition for multiplicity of demands, etc., denying generally the injuries charged, and stating in regard to the conveyance: "He denies having used force or violence to compel or induce the plaintiff to execute the deed which is prayed to be canceled; on the contrary he alleges that the said deed was made and executed for a good and valid consideration." And it concludes with the plea of prescription. The answer was not verified.

The cause was tried and heard on the —— day of October, 1840. A jury found that the defendant entered on the premises of the plaintiff without any title in law or warrant of authority from the plaintiff; that the plaintiff, with a view to be restored to possession, gave up one portion of his land to get possession of the other portion, and that the title of the plaintiff was genuine. On the trial, the defendant's counsel

---

ruary 2, 1858 (Gammel's Laws of Texas, vol. 4, p. 968), dispensed with the use of seals on all private instruments, except contracts of corporations. This statute, with the amendment of April 28, 1873 (Gammel's Laws of Texas, vol. 7, p. 503), constitute Rev. Stats., 1895, art. 4862. Harris v. Cato, 26 T., 338; Wimbish v. Holt, 26 T., 673; Read v. Levy, 30 T., 738; Courand v. Vollmer, 31 T., 397; Bernhard v. De Forrest, 36 T., 518; Clayton v. Mooring, 42 T., 182. Under the statute of 1858 and the present law, the following instruments are valid without seal: (a) Appeal bonds. Russell v. McCampbell, 29 T., 31; Read v. Levy, 30 T., 738; Hart v. Kanady, 33 T., 720; Boney v. Waterhouse, 35 T., 178. (b) Attachment bonds. Bernhard v. De Forrest, 36 T., 518 (overruling Read v. Levy, 30 T., 738; Courand v. Vollmer, 31 T., 397;

moved that the jury should be instructed: 1. If they believed the parties compromised their difficulties and settled the same, they should find for the defendant. 2. If they believed the deed to defendant was made without force or threats, they should find for the defendant as to the deed. 3. If they believed that after the alleged force, etc., the parties settled their matters and lived together amicably, they should find for the defendant. 4. Even if force were used at first, still if the plaintiff, when not under its influence, complied with his contract, he could not recover back the thing sold or given. These the court refused to give, but charged the jury, if they believed the defendant entered on the premises without any title in law or warrant of authority from the plaintiff, and that he, with a view to be restored to possession, gave up one portion of his land to get back the other, they might declare the title so made as void; that they should determine from the evidence, if this had been such a case; that if they believed the defendant had a doubtful claim to the league granted to plaintiff, they might find for the defendant; but to come to that conclusion they should be satisfied the defendant had more than a shadow of title; and that if they believed the defendant's entry on the land was without any right to enter, they might find such damages as the evidence warranted. The court after the verdict proceeded to make a decree. After giving in that decree a summary of the proofs and evidence, it was adjudged that the deed for 1000 acres be null and void, and be delivered by the defendant to the sheriff of Brazoria County, to be brought into court and canceled; that the defendant should be enjoined from ever disturbing the plaintiff in his possession of the league of land, and that the plaintiff recover his costs.

The evidence, whether documentary or ore tenus, is moreover spread on the transcript, and because it so fully sustains the petition, verdict and decree, it would be useless to quote it, but we will proceed at once to notice the grounds for reversal urged by the appellant's counsel.

1. It is contended that the deed of January 12, 1832, prayed to be canceled, should have been produced, or its absence accounted for, as a basis for proof of its contents; there being no proof to show the consideration of the deed. This position is untenable. The chief object of the suit was to nullify the deed as an instrument illegally extorted from the plaintiff and as being in the hands of the defendant, liable to be used by him injuriously to the plaintiff, who so far from needing it as a memorial of any right he claimed, reprobated it as inherently vicious and cast himself upon the court to protect him against it. Had it been

Hart v. Kanady, 33 T., 720); Gasquet v. Collins, 57 T., 340. (c) Certiorari and sequestration bonds. Courand v. Vollmer, 31 T., 397; Clayton v. Mooring, 42 T., 182; Tompkins v. Toland, 46 T., 584. (d) Appointment of substitute trustee. Jacobs v. Mildred, 53 T., 72; Cheveral v. McCormick, 58 T., 440. (e) Official bond of county treasurer and county scrip. De Wees v. Colorado County, 32 T., 570; Parker County v. Courts, 2 U. C., 398. Written contracts of corporations should be under corporate seal, but the ancient and technical rule that a corporation could act and speak only by its corporate seal is obsolete with us. Shropshire v. Behrens, 77 T., 275; Gas Co. v. Harber, 1 App. C., sec. 1123. Where an agent makes a contract under seal, without disclosing his agency, the party with whom he contracts can not elect to hold

useful to him as evidence, he would have been required to have notified the adverse party to produce it. The title sought to be protected by it was assailed by the petition; and if the paper contained anything favorable to the defendant, he could have used it as defensive proof. Its existence, and the land on which it was expected to operate, were alike admitted in the answer; and by that answer the question was raised, if it was for a good or valid consideration. Now what was the consideration of that deed? The answer is that it was a good and valid one; but what sort of consideration is not intimated. Let it be repeated that the defendant did not afford to the answer the verification of an oath. He had not such temerity. We are to look into the volume of proof sent up to find why, on what cause, that deed was made. We are not left to *presume* that the verdict was correct. Hall, availing of the temporary absence of Phelps and his wife on a visit to their child, in the spirit and with the hand of rapacity, took possession of the domicile and soil which the unsuspecting and confiding Phelps had acquired by the enterprise and privations of years and trusted would be kept inviolate to receive him on his return. Let it not be imagined that we will descend into the detail of the continued outrage inflicted. It will be enough to remark that he, in his own audacious words, *reigned sole possessor* of the usurped manor and premises, affecting all the power and vaunted hospitality of a successful marauder of the dark ages, until the deed was signed and delivered, and thereafter, until it pleased him to depart! He invited Phelps to the board and the hearth he had taken from him in his absence and with strong hand—a possession he declared he would retain at the cost of life and upon his own principles. He did retain it, until what is called a compromise of a doubtful right was extorted. The deed was given by the oppressed Phelps solely as an expedient, and the only available one, apart from superior force, in the then condition of the country, whereby to find on his own dominion a shelter for himself and family. We are not to decide according to the nerves or tears of a party; but we may be allowed to say that chivalry and outrage have never been regarded as affiliated. The agreement and bond of December 27, 1831, and the pretended deed of January 12, 1832, were alike extorted. The usurpation continued until in March following. We are reluctant to assert any principle containing the boundaries within which a transaction, in its incipiency tortious or void, may be validated by a subsequent deliberate act of the victim; for whenever the law sets up its definitions, the craft and cupidity of man too soon become prepared to fill up the picture, so as

---

the undisclosed principal upon the contract. This principle is not changed by our statute. Rev. Stats., 1895, art. 4862; Sanger v. Warren, 91 T., 472. A contrary rule seems to be announced in Rutherford v. Montgomery, 14 T. C. A., 319, 323.

**Note 17.**—Ex parte Colin De Bland, p. 406.

Quo warranto is a legal proceeding by the State to determine the right of an office or franchise, and to oust or forfeit. As a general rule, it can only be sued out in the name of the State by its prosecuting officer. It is also used to ascertain whether an individual has authority to exercise official functions. Ex parte Colin De Bland, Dal., 406; Bradley v. McCrabb, Dal.,

to escape its penalties  It is sufficient in this case, after rendering due
acknowledgment of the zeal and talent exhibited in the argument, to
declare that what is primarily flagitious can only be cured by voluntary
or adjudicated recompense.  In manifold instances, what is begun prop-
erly but afterwards turned into enormity, or covin, becomes vicious from
the beginning.  The oppression here was one consisting of a series of
trespasses and extending beyond the procurement of the conveyance.  It
was not so urged, but yet we consider Phelps as being harassed, pressed
and overcome; not indeed by manual force, but still by a force equally
lawless and more to be reprehended because of its effrontery and long
continuance.  It was whilst he was under this duress that the conveyance
originated.  Between the mockery of the agreement in which Hall pre-
tended to relinquish his right—as if he had any to relinquish!—and the
deed, where was the time or place to Phelps to repent or retract?  At no
moment was he free to do so, for the incubus remained.  We feel bound
by a solemn sense of duty to admonish the communities of this Republic
to discountenance by every peaceable and lawful means the repetition
of such conduct, and to be at least assured that if it be re-enacted and
brought into the judicial tribunals, it will be visited with the utmost
measure of retributive and corrective justice.

2.  It has been urged that the court below erred in charging the jury
in this, that there might have been, according to the evidence, a compro-
mise of a doubtful right, and the instructions were calculated to prevent
a proper verdict on that ground.  We have examined the evidence in vain
to collect any such state of fact, as would have justified any reference by
the court in its instructions in regard to the rule as to such a compro-
mise.  The charges refused, when connected with those given to the jury,
were well calculated to fix the minds of the jury upon any and every pos-
sible ground of defense to the defendant.  The court did, in effect,
instruct them to find for him if they believed the deed grew out of such
a compromise, provided it was on something more than a mere shadow
of right on the part of Hall; and this we esteem as having been more in
his favor than the court, from the evidence, was bound to give.  It is
true, as established by the books, that a compromise of a doubtful right
will be sustained if the parties act on a full knowledge of the facts, for
it is upon the doubt as to the right that they act, and the law favors what
prevents litigation.  This principle is in perfect harmony with the inter-
esting doctrine that an injured party, whose loss or injury arises out of
his act or agreement made when he was ignorant of his rights or mistook

504; Wright v. Allen, 2 T., 158; State v. S. P. Ry. Co., 24 T., 80; Gran. v.
Chambers, 34 T., 573; Brennan v. Weatherford, 53 T., 330; State v. De Gress,
53 T., 387; Farmer v. State, 69 T., 561; Wallace v. Anderson, 5 Wheat., 291;
Territory v. Lockwood, 3 Wall., 236.  An individual may make the relation
on which the State's officer files the information.  In such cases the proceed-
ings are in the exclusive control of the State's officer, and can not be dis-
missed by the relator.  Banton v. Wilson, 4 T., 400; Mathews v. State, 82 T.,
577; McClesky v. State, 4 T. C. A., 322.  If relator has no interest, court may
refuse to allow the information to be filed, or dismiss it.  Deaver v. State, 27
T. C. A., 453.  Can not be used as a remedy by a stockholder of a corporation.
State v. R. G. Ry., 41 T., 217.  Quo warranto is a proper proceeding to try

the law, may allege that ignorance or mistake as a ground of relief—if the adverse party can not in conscience retain the advantage he has gained—and if, too, the error or ignorance can be shown clearly by proof aliunde. The late Chancellor Kent and a few others have contravened this doctrine; but it stands supported by the current of the most celebrated jurists and judges. It does not, however, appear that there was in the transaction before us, any misapprehension of rights or of the laws; but on the contrary, its remarkable feature is a most willful and deliberate violation of the laws on the part of the defendant, and a full appreciation of the wrong by the plaintiff.

The ground on which the appellee's counsel has treated the conveyance as invalid may be applied. If one receive from another a price for abstaining from the commission of an act which he was bound by law not to commit, he will be compelled to restore the price; or if he had only received a promise, then to release the obligor from it; it being esteemed very base to receive a price for doing what the law compelled him to do. 2 Partidas, 941; 2 Pothier, 28. This is sound morals; and the common law, though not to be the rule of decision in this case, holds the same principle for the conveyance has no shadow of a valid consideration to support it. If here Phelps had acted in ignorance of the law that bound Hall to restore the premises, and had acted under the name and solemnity even of a compromise, equity, which is derived from the civil law and the fountains of universal justice, would have relieved him. 2 Story's Equity, 134.

3. Prescription is invoked to shield the defendant. The deed was procured on the 12th January, 1832, and the suit instituted on the 23d July, 1838, a period of more than six years. The conveyance was only an evidence or muniment of title to a part of the immovable Orozimbo league, and the suit is as well to cancel that as to be quieted in the possession of the whole league. It is therefore more analogous to the action to try titles than any other; and indeed the defendant's title is directly put into controversy, so that the limitation of ten, instead of four or three years, seems most applicable. But under what system of jurisprudence will a court, when proceeding upon the principles of equity, apply to an equitable demand the limitations of legal remedies, stricti juris? Statutes, or laws of prescription or limitation, are adopted in chancery by way of analogy, but yet under such rules and restrictions as that court deems compatible with equity, and hence in transaction of express trust, in such as originated in fraud and much more in those growing out of oppression, the bar is not allowed to intervene. It would be interesting to notice more in detail the civil and English chancery law upon these subjects,

---

title to an office, but it has always been regarded by our courts as only a cumulative remedy. Bradley v. McCrabb, Dal., 504; Wright v. Allen, 2 T., 158; State v. Cooke, 54 T., 482; Flatan v. State, 56 T., 93; Watts v. State, 61 T., 184; State v. Jennett, 63 T., 261; McAllen v. Rhodes, 65 T., 348; Fowler v. State, 68 T., 30; Williams v. State, 69 T., 368; Livingston v. State, 70 T., 393; State v. De Gress, 72 T., 242; Hunnicut v. State, 75 T., 233. The term "franchise" used in Act of July 9, 1879 (Gammel's Laws of Texas, vol. 9, p. 75), Rev. Stats., 1895, art. 4347, regulating quo warranto proceedings, applies

and the accordance of both system upon them; but it is not called for. The court considers it indispensable to notice the districted state of Texas from 1832 to 1835, and the revolution that occurred, as raising a sufficient ground to prevent the bar here invoked.

4.    The last position is that conveyance was promised, and even if that promise had been made through force or fear, it was afterward performed, and so the conveyance will be supported. This would have been correct, if at the conveyance Phelps had acted not only in full knowledge of the facts and of his rights, and had been perfectly free to do or not to do what he did; but the record does not present him in that disenthralled position.

This cause coming to be heard on the transcript of the record herein in the District Court of Brazoria, and it being inspected and the arguments of counsel heard, because it seems to the court that there is no error, it is therefore ordered and decreed by the court here, that the decree of the court below be in all things affirmed; that the appellee recover of the appellant the costs by him in this behalf in this court expended, and that this affirmance be certified below for execution.

*Affirmed.*

## No. XXVII.

## McKinney & Williams v. T. C. Bradbury, Administrator.

### (See Note 27.)

*Appeal from Brazoria County.*

HANSFORD, JUSTICE.—This action was commenced in the District Court of Brazoria by the appellees—"trading together as merchants and partners, under the firm and style of Cole & Cogley," on an account stated, for the sum of $6414.75 against "McKinney and Williams, merchants and partners," of the same county, "trading under the firm and style of McKinney & Williams." The petition, which is in the usual form, with the account annexed, concludes with a prayer "for debt, interest, cost and damages." The answer denies all and singular the allegations of the petitioners and prays judgment for costs; and for further answer alleges that the petitioners were indebted to them in the sum of $6506.39 by account exhibited, and "prays judgment for the same with interest and costs." Upon the issue joined, a trial was had at the fall term of the District Court for Brazoria County, and judgment rendered

---

only to franchises of corporations. State v. Smith, 55 T., 447; I. & G. N. Ry. v State, 75 T., 356. County and district attorneys can not institute quo warranto proceedings to forfeit charter of corporation. Rev. Stats., 1895, art. 4343, in so far as it attempts to confer such power, is unconstitutional. Such proceedings must be brought by the Attorney-General. Constitution, art. 4, sec. 22; State v. Paris Ry., 55 T., 76; State v. Moore, 57 T., 307; State v. I. & G. N. Ry., 89 T., 562; also see State v. S. P. Ry., 24 T., 80; State v. R. G. Ry., 41 T., 217. A contrary rule seems to be held in Morris v. State, 62 T., 728, but it is distinguishable from the other cases, in that the suit was to oust from use of a franchise not authorized by law—may be filed by district attor-

against McKinney & Williams for $4217.87, from which they appealed. There was also a motion in the court below to set aside the verdict and for a new trial, on the following grounds: 1. That the jury misconceived the evidence. 2. There was a mistake in the rendition of the verdict. 3. The verdict was contrary to law and evidence. 4. The defendants were surprised by the testimony relative to the order, or paper, spoken of by one of the witnesses. This last ground was supported by affidavit. The motion after argument was overruled and a new trial refused.

The statement of facts—as agreed on by the parties and certified by the judge—recites, that the appellants admitted the account of the plaintiff, and the appellee admitted the account of the defendants, except $3500 charged by the defendants against the plaintiffs for charter of steamboat Laura. The witness Welsh stated that the boat of McKinney & Williams, the Laura, was chartered by Cogley, one of the firm of Cole & Cogley, to go from Quintana to the mouth of the Sabine river. That after making the charter, Cogley gave an order, or draft on paper, for the amount of the charter, leaving the amount indefinite, and instructing them to furnish the defendants from time to time with what they might want, and that such articles as were demanded by defendants were furnished by Cole & Cogley. The witness was clerk for defendants, but did not know for what purpose the boat was chartered, or whether it was for the benefit of Cole & Cogley or not. There was no direct proof that the contract of charter was a partnership transaction. The court charged the jury that if they believed that the charter was a partnership transaction they would allow the offset.

The court very properly ruled that common report was inadmissible to be given in evidence in the issue joined, and with equal propriety rejected proof of the contents of a written instrument, without its loss, or its possession by the adversary, being first legally established.

The charge of the judge was evidently too general and too indefinite. It embraced a mixed question of law and fact. In civil cases, the law is properly confided to the court and the facts to the jury. To the legal abilities and the discriminating judgment of the court has been wisely committed the more difficult task of expounding the law to the jury; and to the judgment of twelve honest men, however unlearned, that of finding the facts and applying the law, under the charge of the court, to the facts thus found. It is when each are confined within the limits of its respective sphere as established by the Constitution and

ney pro tem. Fowler v. State, 68 T., 30; Davis v. State, 75 T., 420; Little v. State, 75 T., 616; Bell v. Faulkner, 84 T., 187, 189; Dean v. State, 88 T., 290; State v. Thompson, 10 T. C. A., 272; Hanscom v. State, 10 T. C. A., 638; Hussey v. Heim, 17 T. C. A., 153; Gray v. State, 19 T. C. A., 521; Quintanilla v. State, 23 T. C. A., 479. Though the State may appeal without bond, the costs should be taxed against the relator, not the State. Hussey v. Heim, 17 T. C. A., 153; State v. Broach (T. C. A.), U. R. C., 1896. It does not lie when there is no question as to the right to the office, to question right of officer to do an act or restrain him from exercising a privilege incident to his office. State v. Smith, 55 T., 447. Nor to oust an officer for bribery until conviction. State v. Humphries, 74 T., 466. Nor to revise decision of city

laws, and in strict conformity also with the great landmarks of that science which has been justly called the perfection of "human reason," and the maxims and rules of which constitute the most stupendous fabric of intellectual grandeur ever reared by the mind of man, that the boasted trial by jury can be properly appreciated. The court should have charged the jury what constituted, in law, a partnership, and then left the jury to find the facts and apply those facts to the law. Is it to be expected that the yeomanry of the country, who must always constitute our juries, can decide what acts of one member of a firm are binding in law upon that firm? This would indeed be requiring of twelve men, uneducated in the first principles of the law, to decide upon questions in one of the most difficult branches of the most difficult science that has ever occupied the cogitations of the human understanding. And although we can not say, in the language of the defendants' motion for a new trial, "that the jury misconstrued the evidence," we will say, that having been improperly employed in the function that belonged alone to the court—that of deciding what act in law of one partner was binding upon all—they "misconceived" the law, as they must generally do whenever the task of expounding it is committed to such unskilful hands. It was error then in the court below to so charge the jury, and the result was a verdict contrary to law and evidence.

Now let it be admitted for the sake of argument that Cogley chartered the steamer Laura for his own individual use and on his own private account; it is an allegation that could only properly be made by the plaintiffs, and on them and not upon the defendants rested the onus probandi. By a well settled rule of practice, as old as the law itself, the party making an averment must show that the allegata and the probata must correspond. And even in that case it would not be sufficient, if the transaction was of a character fairly within the range of the commercial transactions of the firm, unless a knowledge of the fact is brought home to the defendants by proof, and that they extended to Cogley the credit upon his own individual capacity. And supposing too that it was a private transaction of this character (and it is a supposition at war with the whole tenor of admissions of the parties and the evidence in the cause), yet subsequent to that transaction and in liquidation of the debt which had accrued upon the charter of the Laura, we find the firm of Cole & Cogley furnishing the defendants, in the language of the witness Welsh, "what things they wanted from time to time;" thus recognizing by their acts, and ratifying by their compliance with the stipulations of Cogley, the debt which had accrued upon the contract of charter, as a debt due by the firm. It is true that the articles

council as to eligibility of candidate for municipal office. Seay v. Hunt, 55 T., 545; Krakauer v. Kaples, 5 T. C. A., 264. Nor by public weigher against a private weigher. Watts v. State, 61 T., 184. It does not lie to forfeit franchise, except for causes declared by statute. State v. R. G. Ry., 41 T., 217; Morris & Cummings v. State, 65 T., 53. It lies against the enjoyment of a franchise granted either by State or municipal legislation, when the power to grant did not exist; and the legality of the corporation may be called in

thus furnished the defendants from time to time are attempted to be placed to account of the defendants as a running account with reference to the charter party; yet we think the plaintiffs in this attempt have wholly failed.

But although we have admitted for the sake of argument that Cogley chartered the boat for his own use and on his individual credit, we do not believe that he did. We can not believe it in the absence of all testimony. And the rule of law is, that "if the partnership is admitted, the act of each of the partners, in transactions relating to the partnership, is considered the act of all and binds all. The act of one of the partners, though on his private account and contrary to the private arrangement among themselves, will bind all parties, if made without knowledge in the other party of the arrangement and in a matter which, according to the usual course of dealing, has reference to the business transacted by the firm." Kent's Com., p. 41; Hope v. Cust, 1 East, 53; Swan v. Steele, 7 East, 210; Le Roy, Bayard & Co. v. Johnson, 2 Pet., 186.

The books abound with numerous and subtle distinctions on the subject of the extent of the power of one partner to bind the company, and we shall not attempt to do more than select the leading rules and give a general analysis of the case upon this point. If a bill or note be drawn by one partner in his own name only and upon the firm of which he is a partner, on partnership account, the act of drawing has been held to amount, in judge of law, to an acceptance of the bill by the drawer in behalf of the firm, and to bind the firm, as an accepted bill. And even if the paper was made in a case which in its nature was not a partnership transaction, yet it will bind the firm, if it was made in the name of the firm, and there be evidence that it was done under its express or implied sanction. Kent's Com., p. 41; Vesey, p. 602.

It is no matter with what fraudulent views goods are purchased by one partner, or to what purposes he may apply them, it is binding on the firm if the seller be clear of the imputation of collusion. 3 Kent, p. 45. In the case of Doty v. Bates it was held, upon good authority too, that the partnership being admitted, the presumption of law is that a note made by one partner in the name of the firm, in the regular course of partnership dealings, is for the benefit of all the parties and binding on the firm until the contrary be shown. 11 Johns., 546. There is no question as to the rule that if a person take a partnership security from one of the partners, for what is known at the time to be a particular

question by quo warranto in an action involving the right of an officer to do an act under the charter. Morris & Cummings v. State, 62 T., 728; State v. Goowin, 69 T., 55; Furrh v. State, 6 T. C. A., 221. It lies to test validity of a municipal or quasi municipal incorporation. State v. Dunson, 71 T., 65; East Dallas v. State, 73 T., 370; State v. Eidson, 76 T., 302; Ewing v. State, 81 T., 172; Mathews v. State, 82 T., 577; State v. Wofford, 90 T., 514. In such cases laches can not be imputed to the State. State v. Wofford, 90 T., 514; Troutman v. McClesky, 7 T. C. A., 561. It is not a means to compel a person or corporation to carry out contracts. It is used to forfeit, not to suspend a franchise; to reclaim a privilege, not to punish for breach of con-
                                (444)

debt of the partner who gives such security, the partnership is not holden. Livingston v. Hasting, 2 Cam. Rep., 246. But this is matter of defense and must be proved by the party who wishes to take advantage of it. 11 Johns., 547. But in the case under consideration we do not find, in the statement of facts, any evidence on the part of the appellees to establish this point. The charter party was proven; the time the boat was employed under that contract and the value of the services was fully established; and the rule made it incumbent upon the appellees, by way of defense to the appellants' cross action of set-off, to establish that fact before the set-off could be barred. From all that has been said we think that it is clear, upon a fair and ample inspection of the transcript of the record of the trial of this cause in the court below, that the jury was misled by the vague and uncertain charge of the judge, and that the verdict was contrary to law and evidence. And if any doubt could be entertained of the sufficiency of the evidence to have justified the jury in allowing the offset for $3500 upon the contract of charter for the steamer Laura (and we could wish that the facts were more definite on that particular point), yet no doubt can be entertained that it was illegal for the jury to have allowed interest. We speak not now of the excess of interest, which was remitted by the plaintiffs' counsel, of $849.01—the mistake of the jury in the rendition of their verdict; but we speak of the illegality of finding interest at all; because it is certain that we may search in vain for the law in force in this Republic that does in any manner authorize any such finding. 8 La., 11 Id., 520.

Upon a review, then, of all the facts and the law arising in this cause, we are of the opinion that it was error in the court below to refuse a new trial; and it is therefore considered by the court here that the judgment of the court below be reversed, and that this cause be remanded and a venire de novo be awarded, and a new trial had, and that the appellants recover of the appellee their costs in this court expended.

*Reversed and remanded.*

## No. XXVIII.

### H. AUSTIN v. F. A. SAWYER.

*Appeal from Brazoria County.*

SCURRY, JUSTICE.—This case turns purely upon the facts. It appears from the record that Austin exhibited his petition praying for relief

---

tract. Morris & Cummings v. Schooner Leona, 67 T., 303. Though quo warranto is in form analogous to a criminal prosecution, the remedy is civil in nature. State v. De Gress, 53 T., 387; Davis v. State, 75 T., 420; Buckler v. Turbeville, 17 T. C. A., 120; Ames v. Kansas, 111 U. S., 449; Foster v. Kansas, 112 U. S., 201.

**Note 18.**—Republic v. Smith, p. 407.

Appeal is a matter of right guaranteed by the Constitution. Forbes v. Hill, Dal., 486; Bradley v. McCrabb, Dal., 504; Smyrl v. State, 40 T., 121; Eppstein v. Holmes, 64 T., 560; Cornelius v. City of Dallas, 37 T. Cr., 309.

against a judgment recovered against him at the October term, 1837, of the District Court for the County of Brazoria, and obtained an injunction in accordance with the prayer.

From the testimony in this case, it seems that one Robert Stevenson, administrator of the estate of Allen Reynolds, deceased, presented his petition to the probate court of Brazoria County, in which he represented that he had a claim against the estate of A. G. Reynolds, deceased, of which the said Sawyer was then acting as administrator, for the sum of $800, and at the March term of said probate court, 1838, the said claim was allowed by the court, to be paid by preference and privilege out of the proceeds of a league of land lying on Hall's Bayou, and sold by the defendant, Sawyer, as administrator to the said H. Austin, with a stay of six months.

At the October term of the district court, 1839, it seems that Sawyer recovered a judgment, as administrator of the estate of A. G. Reynolds, deceased, against Henry Austin for the sum of $4010, interest and costs of suit; and it was to enjoin the execution upon the said judgment that the bill which is the foundation of this action was exhibited, showing that Sawyer, as administrator of A. G. Reynolds, deceased, had received of Austin the sum of $850, as appears by receipt bearing date 28th August, 1838.

The court below perpetuated the injunction as to $820 and taxed the defendant with the costs, and decided that there was no lien upon the property. From this decision both parties appealed.

It is the opinion of this court that the opinion of the court below be affirmed. The privilege debt, or lien, given to Stevenson, administrator of Allen Reynolds, deceased, by the probate court of Brazoria County, only extended against the debt due from Austin to Sawyer, as administrator of A. G. Reynolds, deceased; and the court can not look upon the facts in any other light; but they are brought to the conclusion that the said privilege debt was discharged by Austin at the time Sawyer executed his receipt to him for the sum of $850.

The court is of opinion that the court below did right in allowing the credit and declaring that there was no subsisting lien outstanding against the property.

It is therefore the opinion of the court that the opinion of the court below be affirmed with all costs.

*Affirmed.*

---

Where the Legislature has failed to provide a mode of appeal, the court may establish one. Wheeler v. State, 8 T., 228; Teas v. Robinson, 11 T., 774; Tucker v. Anderson, 25 T. Supp., 155; Simmons v. Fisher, 46 T., 126; Bishop v. State, 43 T., 390. With us writ of error and appeal are concurrent modes of appealing. Andrews v. Andrews, Dal., 427; Magee v. Chadoin, 44 T., 488.

**Note 19.**—Republic v. Laughlin, p. 412.

As a general rule appellate courts only have appellate jurisdiction and powers incident thereto. Bailey v. Haddy, Dal., 376; Nash v. Republic, Dal., 631; Dewees v. Hudgeons, 1 T., 192; Chambers v. Hodges, 3 T., 517; Burke v. Mathews, 37 T., 73; City of Brownsville v. Basse, 43 T., 440; Bennett v. Waddell, 54 T., 273; Walls v. Marshall, 62 T., 28; Darnell v. Lyon, 85 T., 455. It is within the power of appellate courts to devise means to enforce their

## No. XXIX.

### HENRY AUSTIN v. EDMUND ANDREWS, ADMINISTRATOR.

#### (See Note 28.)

*Appeal from Brazoria County.*

BAYLOR, JUSTICE.—In this case the appellant, Austin, obtained an injunction enjoining an execution sued out against his property on a twelve months' bond, as it is commonly called.

On a motion to dissolve the injunction for want of equity, the facts agreed on by the counsel of the parties are as follows: "The original judgment in the court below of Andrews, administrator, etc., v. Austin, was founded on a note bearing date the 24th of November, A. D. 1836, and it was admitted at that time, and also at the maturity of the note, there could be no forced sale by a creditor of the property of his debtor for less than two-thirds of its appraised valuation. The property of Austin was levied on and offered for sale, but not selling for two-thirds of its valuation, it was sold on a credit of twelve months, under the act of Congress of January 26, 1839, and was bought in by Austin's agent; bond was given pursuant to the act of Congress above mentioned; at the maturity of the twelve months' bond, the money not being paid, execution was sued out on it, and an injunction was obtained enjoining this execution.

"The district judge sustained the motion to dissolve the injunction, and decreed that the complainant, Austin, should pay the costs," etc.

From this decree Austin appealed, and assigns for error:

1. That the law in force at the time the contract was made, as to its enforcement, constituted the obligation of the contract.

2. That at the time this contract was entered into, the maker of the note was bound to pay the money or to let his property be sold under execution for the amount, provided that it should not be sold for less than two-thirds of its appraised value.

3. The act of Congress directing a sale on a credit of twelve months ought not to be construed to have a retrospective action, so as to embrace prior contracts.

The only question presented for our consideration by the assignment of errors we think may be narrowed down to a single point—and that is, how far does the law which was in force at the time the contract was made and fell due, as to its enforcement, constitute the obligation of the contract?

It may be well to observe, before we proceed to dispose of this question, that the note sued on was executed and became due after the adoption of the Constitution. This consideration will enable us to

---

jurisdiction and to adopt rules and mode of appeal when the statute is deficient. Wheeler v. State, 8 T., 228; Teas v. Robinson, 11 T., 774; St. Clair v. Hotchkiss, 28 T., 474; Simmons v. Fisher, 46 T., 126, 131; Vance v. State, 34 T. Cr., 395, 399.

decide this matter with all the light thrown on it by the adjudications of the courts in the United States. The clause contained in our Constitution which prohibits Congress from passing any law impairing the obligation of contracts is also found in the Constitution of the mother country; and it may be added there is not a single clause of the Constitution of that country which has given rise to more acute and vehement controversy, and the nature and extent of whose prohibitory force has called forth more ingenious speculation and more animated juridical discussion. What is a contract? What is the obligation of a contract? What is impairing a contract? To what classes of laws does the prohibition apply? These and many other questions of no small nicety and intricacy have vexed the legislative halls as well as the judicial tribunals of that country with an uncounted variety and frequency of litigation and speculation.

The learned judge, Mr. Justice Story, from whom many of the foregoing observations are taken, in his commentaries upon these various questions, remarks as to the impairing of the obligation of contracts: "Although there is," says he, "a distinction between the obligation of a contract and a remedy upon it, yet if there are certain remedies existing at the time when it is made, all of which are extinguished by new laws, so that there remain no means of enforcing its obligation and no redress, such an abolition of all remedies, operating in presenti, is also an impairing of the obligation of such contract. But every change or modification of the remedy does not involve such a consequence. No one will doubt that the Legislature may vary the nature and extent of remedies, so always that some substantive remedy be in fact left. Nor can it be doubted that the Legislature may prescribe the time and modes in which remedies may be pursued. The obligation to perform a contract is coeval with the undertaking to perform it. It originates with the contract itself and operates anterior to the time of performance. The remedy acts upon the broken contract and enforces a pre-existing obligation, and a State Legislature may discharge a party from imprisonment upon a judgment in a civil case of contract, without impairing the Constitution; for this is but a modification of the remedy, and does not impair the obligation of the contract." If these principles be correct, of which we have no doubt, they are decisive of the point under consideration. The Act of January 26, 1839, operated only as a modification, or change of the remedy, and this it was competent for Congress to do.

The complaint, however, in this instance comes from the debtor, Austin; but we see no good reason why the principles here established

---

**Note 20.**—Mills v. Waller, p. 416.

Generally fraud is a question of fact for the jury. It can not be presumed unless the circumstances are so strong and pregnant that no other reasonable conclusion can be drawn from them. Paxton v. Boyce, 1 T., 317; Briscoe v. Bronaugh, 1 T., 326; Bryant v. Kelton, 1 T., 415; Turner v. Lambeth, 2 T., 365; Tompkins v. Bennett, 3 T., 36; Graham v. Roder, 5 T., 141; De Leon v. White, 9 T., 598; Linn v. Wright, 18 T., 317; Baldwin v. Peet, 22 T., 708; Layton v. Hall, 25 T., 204; Van Hook v. Walton, 28 T., 59; Giddings v. Steele, 28 T., 732; Weisger v. Chisholm, 28 T., 780; Gerhard v. Neese, 36 T., 635;

should not embrace the debtor as well as the creditor. The act of Congress of 1839 was, as to him, but a modification or change of the remedy upon his broken contract, which we have already said was competent for that body to do. This evil, if indeed it be one, he might easily have averted by the payment of a just debt.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.

## No. XXX.

### HIRAMS & DONAHO v. COIT.

(See Note 29.)

*Appeal from Liberty County.*

HUTCHINSON, JUSTICE.—The appellee filed his petition against the appellants, asserting title in a league of land in Tarquenton's prairie between the Trinidad and San Jacinto; that his title began by occupancy as a frontier settler, which was consummated by a grant from Charles S. Taylor, special commissioner for putting into possession and issuing titles to settlers on the frontier; that the appellants by collusion and fraud procured a grant for the same league; and praying decree for the land and that the adverse title should be canceled. There were plea, answer in chief, and response to interrogatories appended to the petition; documentary evidences of the conflicting titles, and oral evidence in several depositions. The cause was conducted as one in chancery and a decree rendered in favor of Coit for the land and vacating the defendants' claim as fraudulent.

We have carefully inspected the whole, and though we are satisfied that the most if not all of the proof within the power of the parties is now before us, yet from the variety and occasional conflict of the evidence, we deem it safer and more conducive to a satisfactory determination of the controversy to remand the cause with directions to have tried, by a jury in the county where the land is situated, such issues as may seem best calculated to enable the court below to pronounce its decree. It is therefore unnecessary to attempt a determination of the various and very important questions which in a most impressive and able argument of the counsel have been urged.

There was an objection made to the appeal bond, which, if sustainable, would have resulted in a dismissal of the appeal. The statutes on the subject of such a bond are essentially remedial and must be liberally interpreted and applied. The chief object of such a bond is

King v. Russell, 40 T., 124; Kerr v. Hutchins, 46 T., 384; Sparks v. Dawson, 47 T., 138; Mathis v. Oberthier, 50 T., 329; Flanagan v. Oberthier, 50 T., 379; Weaver v. Ashcroft, 50 T., 427; Peiser v. Peticolas, 50 T., 638; Bibber v. Mathis, 52 T., 406; Scott v. Alford, 53 T., 82; Eicks v. Copeland, 53 T., 581; Morrison v. Clark, 55 T., 437; Ellis v. Valentine, 65 T., 532; Rohrbough v. Leopold, 68 T., 254; Elser v. Graber, 69 T., 222; Wylie v. Posey, 71 T., 34;

to afford to a creditor, whose demand is adjudged or decreed, security and indemnity for the delay and expense of prolonged litigation; and hence it is required to be in double the amount adjudged or decreed. Here the petition avers the land to be worth $20,000; but its actual value is neither ascertained nor decreed, whilst the land itself is required to be restored, and that remains a permanent security for itself. There is no pecuniary measure for the penalty of the bond afforded by the decree except the costs, the intermediate rents not having been put into contest. The omission of the name of an obligor in the body of a bond, when it is duly signed by him, although sometimes the subject of judicial cavil, forms no substantial objection to it. According to a clear and very impressive maxim of the Roman code, which when put in harmony with other important principles, should be of universal approbation—"as one binds himself, so shall he be bound." His signature sufficiently assures us of his intention.

Before awarding the issues contemplated, it is proper to declare a principle of equity practice, which in the trial of those issues ought to be observed by the court and jury. To the petition are appended interrogatories to be answered by the defendants. Hirams answered them. In his reply to more than one, after responding to the subject of interrogation, he proceeds to introduce matter not introduced in the question; as, for example, he gratuitously introduces himself as the purchaser of John Berry's improvement and occupancy. The well established rule is this, that what a party, in answer to discoveries prayed, responds directly in reference to the subject of the prayer or interrogation, it is to become evidence; the answer is then considered responsive and not excursive. But when in the answer anything not embraced by the prayer or interrogation is obtruded, it is to be disregarded. It can not avail the respondent, unless he has an equivalent allegation in his pleading and introduces proof aliunde to sustain the averment.

One of the difficulties, that have prevented a decision of the cause in this court, is that the resolution of the Mexican government of April and August, 1828, referred to in the thirty-second section of the Decree of Coahuila and Texas, No. 272, of March 26, 1834, can not be found to be consulted; and it is hoped the counsel may have access to them on a new trial.

This cause came on to be heard on the transcript of the record herein in the District Court of Liberty County; and the same being inspected and the arguments of counsel heard, because it seems to the court that sundry issues ought to be sent and tried by a jury in the said district court, it is therefore ordered and decreed by this court, that the decree

Schmick v. Noel, 72 T., 1; Bluntzer v. Dewees, 79 T., 272; Compton v. Marshall, 88 T., 50; Baxter v. Howell, 7 T. C. A., 198; Cooper v. Friedman, 23 T. C. A., 585; Granrun v. Rea, 24 T. C. A., 299; Dutton v. Clear, 26 T. C. A., 547. May be presumed from indebtedness at time of conveyance. Briscoe v. Bronaugh, 1 T., 326. Gross inadequacy of price leads to presumption of fraud. Mills v. Waller, Dal., 416; Briscoe v. Bronaugh, 1 T., 326; Bryant v. Kelton, 1 T., 415. Possession by vendor after sale is prima facie presumption of fraud. Bryant v. Kelton, 1 T., 415; Morgan v. Republic, 2 T., 279;

rendered herein be set aside; that this cause be remanded; that the court below do submit to the verdict of a jury the following issues: 1. To whom did John Berry transfer his improvement and occupancy of the land in controversy, whether to Campbell Berry or to the defendant Hirams; or whether he abandoned the land? 2. What title, if any, has the plaintiff to the land; is it fair and valid, or otherwise? 3. What title to the land has the defendant Donaho, if any; is it fair and valid or otherwise? 4. What effect, if any, had the agreement and relation between the defendants upon the title of Donaho? Let the court below upon these issues instruct the jury as to the laws governing the matters involved, and by the aid of the verdict proceed to decree finally as to law and equity may appertain. It is also considered here, that all the evidence heretofore heard by the court below and sent up in the transcript, including the answers of Hirams that are responsive to the interrogatories to him, be used on the trial of the issues with such other oral testimony as the parties may produce. It is farther ordered and decreed here, that the appellants recover their costs in this behalf in this court. Let this revisory decree be certified below for observance.

*Reversed and remanded.*

---

# JANUARY TERM, 1842.

## No. I.

### JONES v. A. P. NOWLAND.

*Appeal from Fort Bend County.*

HUTCHINSON, JUSTICE.—Nowland, by the name of A. P. Nowland, for the use of James Perry, administrator of the estate of A. McCoy, sued Jones on his note to him for $404.90, bearing interest at 12½ per cent until paid. It is copied in the petition, has no date, and there is no allegation as to its date or place of origin. As is usual in transcripts coming here, the papers in the case are copied without any introductory matter by the clerk showing when they became of record by being filed in the court. We are even left to suppose that the suit was instituted on or about the 15th April, 1839, from the date of the citation. At April term, 1839, the defendant pleaded that he did not promise to pay the note as alleged. At the fall term, 1839, the de-

McQuinnay v. Hitchcock, 8 T., 33; Converse v. McKee, 14 T., 20; Linn v. Wright, 18 T., 317; Mills v. Walton, 19 T., 271; Gibson v. Hill, 21 T., 225; Van Hook v. Walton, 28 T., 59; Hamburg v. Wood, 66 T., 168; Edwards v. Dickson, 66 T., 613; Peters Saddlery Co. v. Schoelkopf, 71 T., 418; Traders Nat. Bank v. Day, 87 T., 101. Fraud may be proven by circumstances or by presumptive

fendant "moved to set aside the suit on the ground that the defendant had been garnished to answer to what money he owed to A. P. Nowland." Probably at that term he also pleaded the nonprofert by the plaintiff of his letters of administration. At the spring term, 1840, he filed a general demurrer to the petition; at that term the court overruled the demurrer and gave judgment for the plaintiff for his principal and 5 per cent interest from July 1, 1838, until paid, with costs. The judge in a separate paper certifies his reasons for overruling the demurrer and giving only 5 per cent interest; but the testimony, if any was given, is not certified, and no disposition seems to have been made of the pleas and motion to set aside the suit. Such is the transcript in review.

Yet these proceedings occurred before the Legislature had attempted to give us a jurisprudence better understood by the courts, the bar and the people than that in use, and at a period when the country itself was in the process of formation; so that manifold allowances are to be indulged.

We take it for granted, too, that the presiding judge, in giving judgment only to the demurrer, could not have been apprised of the other pleas in the case. We also presume there was evidence to fix the time and place of the origin of the note and to regulate the rate of interest; but we must pass on the record as it is exemplified for our inspection.

According to the civil law, each party had the privilege of two distinct allegations in order to the presentation of the questions of law and of fact arising; the petition and the answer and the allegations corresponding to the replication and rejoinder for the introduction of new matter of excuse, of avoidance, and the like.

In practice it was necessary to present matters a limine litis and have them determined prior to the introduction of the merits upon the facts. In this case this rule was reversed by the counsel. The first plea was to the merits; the second plea at a subsequent term sought to raise a point of law; and the third, at a later term, questioned the legal sufficiency of the whole petition. Profert of the letters administrative to the beneficiary in the suit was not even proper. The defendant had no right to raise any question as to Perry's authority as administrator. He was not the plaintiff. Nowland, the payee, in whom was vested the legal interest, was properly suing, and it was immaterial to the defendant for whose use he sued. The court correctly overruled the general demurrer to the petition; but the error was in this, that after determining that matter, a jury ought to have been called to try the issue of fact. Indeed the second and third pleas ought to have been disregarded,

evidence. Briscoe v. Bronaugh, 1 T., 326; Graham v. Roder, 5 T., 141; Thompson v. Shannon, 9 T., 536; Walcott v. Brander, 10 T., 419; Burch v. Smith, 15 T., 219; Van Hook v. Walton, 28 T., 59; Rider v. Hunt, 6 T. C. A., 238. Purchaser is not affected by fraudulent intent of his grantor, if he had no notice of it. Pierson v. Tom, 1 T., 577; De Leon v. White, 9 T., 598; Fowler v. Stoneum, 11 T., 478; Sydnor v. Roberts, 13 T., 598; Snow v. Hawpe, 22 T., 168; Shearon v. Henderson, 38 T., 245; Collins v. Cooke, 40 T., 238; Flanagan v. Oberthier, 50 T., 379; Cavanaugh v. Peterson, 47 T., 197; Wagon Works v.

stricken from the record, as coming too late. The motion to set aside the suit because of the garnishment should have been rejected. Its matter was the proper subject for a plea, or answer in chief.

This cause coming on to be heard on the transcript of the record in the District Court of Fort Bend, and it being inspected and the arguments of counsel heard, because it seems to the court here that there is error in the judgment below, it is considered by the court here that the said judgment be reversed; that the cause be remanded; that the parties be allowed to amend their pleadings with a view only to have the merits of the case decided; that the appellant recover of the appellee his costs in this court, and this decision be certified below for observance.

*Reversed and remanded.*

## No. II.

### WHITING v. TURLEY.

#### (See Note 30.)

*Appeal from Travis County.*

HUTCHINSON, JUSTICE.—Turley sued Slocomb and Whiting for that he, at their request, furnished and built for them a fence of 223 panels at $6 per panel; that they in consideration promised to pay him the amount, etc. The petition contained another demand in account. Slocomb and Whiting were both cited and pleaded in one plea, "not guilty, jointly or severally." It was proved that Turley contracted with Slocomb to furnish the materials, etc., at the price, not naming in what currency—Whiting not mentioned—the contract being with Slocomb alone; that at the time Slocomb was not Whiting's partner, but was working for him on hire; that the fence was built by Turley; the witnesses varying as to its quality and value. It is certified that there was no evidence that Slocomb was either the partner or agent of Whiting, or that Whiting had any interest in or knowledge of the transaction. The jury assessed $204.18¾ for Turley and found that there was no partnership between Slocomb and Whiting at the contract; that Whiting was justly bound for the sum assessed; that they had no evidence that Slocomb induced Turley to believe he was acting as agent at the time of the contract; and that the contract was made by Slocomb. After this verdict, and before reasons in arrest of judgment, Turley's counsel moved the court to permit him to dismiss as to Slocomb, and to give judgment against Whiting. This motion was in writing. Two reasons in arrest of judgment were filed: Misjoinder of defendants; the verdict irresponsive to the issue—contradictory of the plaintiff's

Tidball, 59 T., 291; Publishing Co. v. Johnson, 68 T., 273; Le Page v. Slade, 79 T., 473; Brackenridge v. Cobb, 85 T., 448; Watkins v. Sproull, 8 T. C. A., 427; Richardson v. Lewis, 4 App. C., sec. 42; Ranney v. Hogan, 1 U. C., 257. Must be a purchaser for value. Lewis v. Castleman, 27 T., 407; Belt v. Raguet, 27 T., 471; Tuttle v. Turner, 28 T., 759; Collins v. Cooke, 40 T., 238; Brown v.

allegations—inherently contradictory; and that there could not be judgment against Whiting. The court allowed the nolle prosequi moved, and gave judgment against Whiting. He appealed. The counsel for the appellant insists it was error not to have sustained the reasons in arrest of judgment, and that there was no evidence on which to charge the appellant; and the counsel for the appellee contends that the verdict responded to the allegations; that the nolle prosequi was correct, and the judgment good. It was a favorite object of the Constitution to have introduced the body of the English common law as being in the language of our people and a code to which mostly they had been accustomed. It was at length introduced so far as consistent with the Constitution, our statutes, condition and institutions; but the act of adoption was concurrently qualified by another, abolishing the common law system of pleading and requiring suits to be by petition and answer as theretofore; thus, on the subject of the pleadings, leaving us to find principles and criteria in a language generally unknown to us. Now at common law a civil prosecution embraces various parts or divisions. First, the process and bail, then the pleadings, then the postea including trial, then the judgment, the execution and the appeal, or writ of error. The pleadings are only the graphic allegations of the parties in order to the decision of the questions of law and trial of the matters of fact arising. It must be plain to every one that we are constrained for the reasons given to confine the last named statutory provision to a strict interpretation; and hence the written averments of the cause of action, of the defense of what pertains to a presentation for determination of the matters in controversy, and those only, are not to be regulated by the common law, but referred to the doctrines and jurisprudence coming to us through Coahuila. Herein we must obey the legislative will and endure as long as we may the constant perplexities that in consequence annoy and delay us at each step.

Among the principles of the common law as understood and practiced at its introduction, and not discarded as pertaining to the pleadings, are those governing the form, the parties to the action, and the proceedings of the petition and answer.

In regard to the form, this was clearly an action at law to have compensated in damages a breach of contract, and not a remedy in chancery for the redress of infracted equitable rights. If the liability was joint it was incumbent on the plaintiff below to sue all who were liable to him. If the contract had been joint and several, he might have sued any one or all. If the defendants had been partners, he might have sued such of the partners as were known to him, and the nonjoinder of

---

Hedge Co., 64 T., 396; Steffian v. Bank, 69 T., 513; Kerr v. Oppenheimer, 20 T. C. A., 40. Protected only to extent of value paid up to time of notice. Tillman v. Heller, 78 T., 597; Cleveland v. Butts, 13 T. C. A., 272. Assignee of an option is not protected as an innocent purchaser against the fraud of his asignor. O. & P. L. Co. v. Tell, 95 T., 586. The sale is void if the purchaser had notice of the fraud, though he paid value. Moseley v. Gainer, 10 T., 393; Walcott v. Brander, 10 T., 419; Fowler v. Stoneum, 11 T., 478; Edrington v. Rogers, 15 T., 188; Wright v. Linn, 16 T., 34; Mills v. Howeth, 19 T., 257;

a dormant or unknown partner could only have been the subject of a plea a limine. Slocomb and Whiting were here sued, not as partners, but as individuals on an assumed joint liability. This was an election by Turley of defendants from which he could not recede. He was bound to know for whom he furnished the materials and did the work and to whom he gave credit, there being no partnership trusted. Even in the instance of a joint and several liability, having made the election of whom to sue, he must abide it. The action being ex contractu, he could not, in England, discontinue as to either of several sued, until process of outlawry; and here when that proceeding would not comport with our polity he could not discontinue, until after the return of at least one (perhaps two) citations non est inventus. But in all actions on contract where several are sued and are arrested or cited, they are brought into court, and it is incumbent on the plaintiff to make out a case to charge them. This is the general rule, to which there are the exceptions of infancy, coverture, etc.

It is otherwise in actions ex delicto, for obvious reasons. How far our statute of amendments may relax these principles of the common law it is not material now to decide. It allows all amendments in the proceedings, *before verdict,* that shall seem necessary to reach the merits between the parties. Whether in its utmost extension as a remedial provision, it may before verdict allow a defendant misimpleaded to be dismissed, or a new defendant introduced, we do not here determine. We all concur that in this case the discontinuance, after verdict, was a discontinuance of the action. The jury found that the contract was with Slocomb; he, therefore, was clearly chargeable. If, too, Whiting was liable, as found, the plaintiff's case was made out, and he ought to have proceeded to judgment against both; but in regard to him the verdict is uncertain and unsatisfactory. It finds, what is in conflict with the conclusion, that he is liable; that he was not Slocomb's partner; that Slocomb's agency (if there was an agency) was not disclosed, and that the contract was with Slocomb. Changes of parties in chancery depend on reasons arising out of the peculiar jurisdiction of that court; as for instance it is one of its principles, that having cognizance of one branch of a transaction it will take jurisdiction of the whole, and call before it all persons concerned, so as to determine the whole at once and finally, thereby preventing multifarious and vexatious litigation.

It may be proper to notice passingly the provision in the statute requiring the district judge to proceed in the first instance to try the cause as at law, and if he can not succeed in the effort, then to ascend the

Humphries v. Freeman, 22 T., 45; Castro v. Illies, 22 T., 479; Weisiger v. Chisholm, 22 T., 670; Baldwin v. Peet, 22 T., 708; Garahy v. Bailey, 25 T. Supp., 294; Weisiger v. Chisholm, 28 T., 780; Eliot v. Whitaker, 30 T., 411; Gaston v. Dashiell, 55 T., 508; Greenleve v. Blum, 59 T., 124; Traylor v. Townsend, 61 T., 144; McKinnon v. Lumber Co., 63 T., 30; Brown v. Hedge Co., 64 T., 396; Ellis v. Valentine, 65 T., 532; Blum v. Simpson, 66 T., 84; Tillman v. Heller, 78 T., 597; Mixon v. Symonds, 2 T. C. A., 629; Worsham v. Vignal, 14 T. C. A., 324; Bank v. Martin Brown, 20 T. C. A., 52; Kerr v. Oppenheimer, 20 T. C. A., 140; Koch v. Bruce, 20 T. C. A., 364; Hall v. Harga-

woolsack and cancel it! A volume might be filled with disquisitions upon the meaning and scope of the provision. A hundred judges, in almost any conceivable case, might differ in some degree as to its interpretation and exact function. Possibly it may mean this, that in the development of what are to be adjudicated in the cause, if the judge consider them as more properly determinable according to the course and powers of a court of chancery, he may allow the pleadings and parties to be so changed as to accomplish the object; but if so, still there ought to be put on record his order for the change, so that if illegal or improvident, it may be revised; uniformity in the application of the act is impossible. The exertion of the undefined power given is dangerous, because by the transition from the common form the trial by jury is so far evaded as to leave its intervention to the option of the judge. In this case there was no resort to this statute. The case is still where it began at law; and the nolle prosequi can not be repaired.

We all concur that there was no sufficient evidence on which to support the judgment against Whiting. It must be totally reversed.

*Reversed and remanded.*

## No. III.

### WILLIAM HART v. AUGUSTUS W. KING.

#### (See Note 31.)

*Appeal from Bowie County.*

JONES, JUSTICE.—This is an appeal from a judgment of the District Court of Bowie County, rendered at the fall term of said court in the year 1841. The suit was instituted by the plaintiff Hart against the defendant King upon two promissory notes, executed by the defendant's testator in his lifetime to the plaintiff. At the trial term of the court the defendant, by his counsel, entered the plea of nil debet, and immediately thereafter filed a general demurrer to the plaintiff's petition, upon which the following judgment was rendered: "This cause coming on to be heard on demurrer, the defendant craved oyer of the notes, which was refused by the plaintiff. The cause was then heard on demurrer, which demurrer was sustained by the court. It was therefore ordered, etc." It is difficult to discover upon what grounds the demurrer to the plaintiff's petition was sustained, unless they may be explained by the bill of exceptions in which is contained the following sentence: "The defendant verbally craved oyer of the plaintiff of the notes upon which the suit was brought, which was refused by the plaintiff.

dine, 23 T. C. A., 149; Blankenship v. Turner, 3 App. C., sec. 427. Or if he has notice of facts sufficient to excite the suspicion of a prudent man and put him upon inquiry. Mills v. Howeth, 19 T., 257; Humphries v. Freeman, 22 T., 45; Garahy v. Bailey, 25 T. Supp., 294; Edmundson v. Silliman, 50 T., 106; Scott v. Alford, 53 T., 82; Cox v. Miller, 54 T., 16; Blum v. Simpson, 66 T., 84; Blum v. Simpson, 71 T., 628; Dodd v. Gaines, 82 T., 429; Ratto v. Bluestein, 84 T., 57; McConnell v. Bruggerhoff, 1 App. C., sec. 1005; Bailey v. Carrington, 3 App. C., sec. 179; Scheuben v. Wheeler, 4 App. C., sec. 211. No-

Whereupon the court ordered that unless plaintiff would comply with defendant's request aforesaid, the demurrer should be sustained, which was accordingly sustained."

The only reason assigned by the district court for rendition of judgment upon the demurrer is the plaintiff's refusal to the defendant of oyer of the notes upon which suit was brought. The refusal to give oyer of the notes, after issue joined on the part of the plaintiff, is sustained by the law, whilst the judgment on demurrer is erroneous.

The demand of oyer is a species of pleading, and should be made before issue joined—otherwise the court should permit the cause to go to the jury, or give judgment for the plaintiff if the defendant waive a jury. In this case the district court might have overruled the demurrer and required the defendant to go into trial under his plea of nil debet, when the plaintiff would produce the notes as evidence of the indebtedness of defendant's testator. This course would give the defendant all the advantage which he could have gained by a demand of oyer at the proper stage of the proceedings.

The common law has long since settled that oyer of an agreement, note or other instrument, not under seal, can not be craved; and if the defendant improperly demand it, the plaintiff should be allowed to proceed as if no such demand had been made; but where the court may deem it necessary, it will, before issue joined, by analogy of the doctrine of oyer, order that the plaintiff permit the defendant to have an inspection, and copy of the instrument sued upon.

If the district court had given an order to the plaintiff to produce the notes for the defendant's inspection in the present case, before an issue was rendered and accepted, the appellate court would not have questioned the exercise of a discretion which might have directed such order.

The court can not discover from any inspection of the record any legal ground, upon which judgment should have been rendered by the district court for the defendant upon his demurrer to the plaintiff's petition, or for the order that the defendant should have oyer of the notes sued upon at the time of the demand.

It is therefore of opinion that the judgment of the District Court of Bowie County is erroneous, and that the same be reversed, and that the cause be remanded for further trial upon the merits.

*Reversed and remanded.*

---

tice to agent is notice to principal. De Leon v. White, 9 T., 598. A subsequent bona fide purchaser for value is not affected by the fraud of his vendor. Sydnor v. Roberts, 13 T., 598; Barnes v. Hardeman, 15 T., 366; George v. Watson, 19 T., 354; Johnston v. Smith, 21 T., 722; Hardy v. Broaddus, 35 T., 668; Link v. Page, 72 T., 592. While inadequacy of price in any case is a circumstance to be considered in determining the question of fraud, it is not of itself sufficient proof. Burch v. Smith, 15 T., 219; Moore v. Lowery, 27 T., 541; Brown v. Texas Cactus Hedge Co., 64 T., 396. But it may be such as to only require very slight evidence and it may be so gross as to be decisive evidence of fraud. Edrington v. Rogers, 15 T., 188; Burch v. Smith, 15 T., 219; McFaddin v. Vincent, 21 T., 47; Chamblee v. Tarbox, 27 T., 139. At civil law, inadequacy of half the value is sufficient to avoid the sale. Briscoe v. Bronaugh, 1 T., 326.

## No. IV.

### Fulton v. Craddock.

(See Note 32.)

*Appeal from Red River County.*

BAYLOR, Justice.—Craddock, the plaintiff in the court below, brought this action against Fulton, as the surviving partner of the firm of Cravens & Fulton, to recover the value of a quantity of corn which he charges in his petition was fraudulently obtained by the firm of Cravens & Fulton from one Tomlinson, by collusion with him whilst acting as Craddock's agent to sell the córn.

The fraud alleged is that Tomlinson was individually indebted to the firm of Cravens & Fulton, and for the purpose of securing the payment of their debt, they purchased, contrary to law and good conscience, the corn of Tomlinson, knowing it to be the property of the plaintiff Craddock. This cause was reversed at the last term of the court on an appeal taken from the District Court of Red River County, mainly on the ground that the facts upon the record did not in our opinion justify the jury in finding a verdict for the plaintiff below.

It is again brought here by Fulton, as the surviving partner of the firm, in order to reverse the case and set aside a second verdict in favor of Craddock.

Upon an inspection of the record and looking into the testimony, we find the proof, although contradictory, to be somewhat stronger in support of Craddock's right to recover; under such circumstances the court will presume (especially after several verdicts) that the jury, who are the proper triers of the facts, have found correctly; we can not therefore disturb the verdict. This is required by the genius and spirit of our laws; if it were otherwise, courts might render juries useless, and usurp the power of ascertaining facts which according to the principles of the Constitution belong to juries in a court of law.

The bill of exceptions taken in the case presents two other questions for our determination:

1. Was the motion to continue the case properly overruled by the judge below?

2. Was the instruction asked for to the jury properly refused?

Upon the first point in looking into the affidavit for a continuance and examining the facts there set forth, we do not find such an abuse of the *legal discretion* given to the district judges to continue causes as to raise the question whether this court will interfere in such cases or not.

Upon the second point the defendant's counsel moved the court to

Note 21.—Hill v. McDermot, p. 419.

  Courts do not take judicial notice of laws of another State or country, and they must be alleged and proved as other facts. Huff v. Folger, Dal.,

instruct the jury, that as the plaintiff had not prayed for any specific relief in his petition, that he could not therefore recover against the defendant. The petition after stating the cause of action concludes, "to the damages of the plaintiff five hundred dollars, and therefore he brings his suit," etc.

This we deem in the present form of action quite sufficient. At all events the objection came too late after the cause had been submitted to the jury.

The court therefore, in refusing the instruction asked for, decided correctly.

The judgment must be affirmed.

*Affirmed.*

## No. V.

### HYRAM SADLER v. LINDLEY JOHNSON

*Appeal from Red River County.*

OCHILTREE, JUSTICE.—This case has been twice decided by the tribunals authorized by law to decide cases, where "persons can not agree to a division line of any land which has never been surveyed agreeably to law." After a deliberate investigation of all the facts contained in the record, we are unanimously of opinion that the judgment of the court below shall be affirmed.

*Affirmed.*

## No. VI.

### WILLIAM BUTLER v. WILLIAM MORETON.

*Appeal from Red River County.*

JACK, JUSTICE.—This is an appeal from Red River County. It was a contest between the parties as to the right of location to a tract of land originating under the seventeenth section of the land law. It was first tried before a justice of the peace and six jurors. It was then taken by certiorari into the district court. In both instances the appellee was there successful.

No bill of exceptions accompanies the record—no principles of law are involved—it is purely a question of fact; and although the testimony which is presented to us is neither conclusive nor satisfactory, we are unwilling to disturb the verdict. The judgment of the court below conforms to the verdict. Let it be affirmed.

*Affirmed.*

530; Cooke v. Crawford, 1 T., 9; Crosby v. Huston, 1 T., 203; Bryant v. Kelton, 1 T., 434; Smith v. Smith, 1 T., 621; Ramsay v. McCanley, 2 T., 189; Jones v. Laney, 2 T., 342; Hill v. George, 5 T., 87; Trigg v. Moore, 10 T., 197; Able v. McMurray, 10 T., 350; Sadler v. Anderson, 17 T., 245; Anderson v. Anderson.

## No. VII.

### B. M. BALLARD v. J. H. ROGERS AND J. J. WARD.

(See Note 33.)

*Appeal from Red River County.*

HEMPHILL, CHIEF JUSTICE.—This is an appeal from the decree of the District Court of Red River County. J. H. Rogers, one of the appellees, had recovered judgment on a promissory note against the appellant, B. M. Ballard, and J. J. Ward, the other appellee in this case. On the rendition of the judgment, the appellant B. M. Ballard applied to the judge of the district court, sitting in chancery, for a writ of injunction to restrain the issuing of execution on said judgment; the prayer of complainant's petition was granted; but on demurrer being filed by defendant, the same was sustained by the court, the injunction dissolved, and the complaint of petitioner dismissed. From this decree the plaintiff has appealed to this court.

Our deliberations and decision will be confined to the matters directly involved in the appeal. The duty is not imposed on us of laboring through the mass of improprieties and irregularities in which the proceedings, previous to the complainant's bill in chancery, are involved. Were we disposed to censure, sufficient matter of reproof would be furnished from the record after the institution of the suit in equity. We waive, however, the reprehension which might properly be bestowed on some portion of the proceedings in this case, and limit ourselves to the discussion of the grounds of appeal.

The petition of the appellant, praying for a writ of injunction, has been attentively considered by this tribunal, and we are of opinion that the matters contained therein are not sufficient to authorize the issuing of the extraordinary writ of injunction. The petitioner does not allege that he was deprived of the opportunity of making his defense, or that his defense was of such a nature as to be inadmissible in the courts of common law. Nor does he allege or show any matter whatsoever which could possibly justify the court of chancery in interfering with the judgment of a court of co-ordinate jurisdiction.

We are of opinion, therefore, that there was no error in the decree of the district court sustaining the demurrer to the appellant's bill of complaint; and it is ordered, adjudged and decreed that the judgment of the court below in this case be and the same is hereby affirmed.

*Affirmed.*

23 T., 639; Armendiaz v. Serna, 40 T., 291; M. K. & T. Ry. Co. v. Cocreham, 10 T. C. A., 166; Western Union Tel. Co. v. Russell, 12 T. C. A., 82; Rosenthal Millinery Co. v. Lennox (T. C. A.), U. R. C., 1899. Written laws of other countries must be proven by authenticated copies, but unwritten may be proven by oral testimony. Hill v. McDermott, Dal., 419; Burton v. Anderson, 1 T., 93; Smith v. Smith, 1 T., 621; Martin v. Payne, 11 T., 292; Ellis v. Wiley, 17 T., 134; Mexican Nat. Ry. Co. v. Ware (T. C. A.), U. R. C., 1900; Dumas v. State, 14 T. App., 464; Patterson v. State, 17 T. App., 102. Practice in Texas

## No. VIII.

### ROBERT HAMILTON v. A. H. McKENSIE.

**(See Note 34.)**

*Appeal from Red River County.*

HEMPHILL, CHIEF JUSTICE.—The appellee recovered judgment against the appellant at the fall term of the court in the year 1840. No notice of appeal was given at the term of the court, and no bond filed according to the requisition of the law. The appellant, who was the defendant in the court below, made application for a writ of injunction, which was accordingly issued; but at the spring term of the court in the year 1841 the injunction was dissolved and petition dismissed for want of equity in its averments. At that term of the court a motion was made to set aside the judgment rendered on the common law side of the court at its former term, and for a new trial on various grounds. The motion was overruled, and from an instrument under seal, which was doubtless intended for an appeal bond, this court is authorized to conclude that an appeal was taken.

The first question which presents itself is whether the court has jurisdiction of the cause.

The motion for a new trial was not made at the term when judgment was rendered, but at a subsequent session of the court. From the examination of the provisions of our laws in relation to new trials, we are satisfied that the motion therefor must be made before the rising of the court at which judgment has been given. We are therefore of opinion that no appeal having been taken within the terms prescribed by law, we can not take into consideration any of the various matters presented on the record, and that the case should be removed from the docket, and it is accordingly so adjudged and decreed.

*Dismissed.*

## No. IX.

### A. H. McKENSIE v. ROBERT HAMILTON.

*Appeal from Red River County.*

MILLS, JUSTICE.—The petition in this case is addressed to the judge acting as chancellor, and contains in substance the following averments: "The appellant, McKensie, upon a certain contract or agreement entered into between himself and Hamilton, made an assignment to Hamilton of his headright certificate of one-third of a league of land, which agreement is as follows: 'Agreement entered into between A. H. McKensie

to permit intelligent Mexicans to testify as to construction of laws of Spain and Mexico. State v. Cuellar, 47 T., 295; State v. De Leon, 64 T., 553. Col-

on the one part and Robert Hamilton on the other part, witnesseth, that said McKensie agrees to let said Hamilton have his headright certificate of one-third of a league of land to locate on Red River, for which said Hamilton is to let said McKensie have the same quantity of land out of claims to be located by Allen Urquart out on or near the Cypress, he, the said McKensie, paying his portion of expense on the same. Said McKensie is to have choice of either end of the 'largest claim set out.' This agreement is dated the 28th of May, A. D. 1838. Hamilton, by the assignment, became possessed of the certificate mentioned, and procured it in the month of August of the same year, to be located upon lands situated in Red River County and bordering on the Red River. Hamilton has ever since, that is to say, from the month of August, A. D. 1838, up to the spring term of the District Court for the County of Red River (at which the petition of appellant was filed), enjoyed the possession of said land, covered by said headright certificate of McKensie. Hamilton has never located, or caused to be located in his behalf, any lands out or or near the Cypress, but after obtaining the certificate of McKensie, withdrew from the hands of Urquart the claims referred to in his agreement with McKensie, and has otherwise than as contemplated by said agreement disposed of them. His negligence in perfecting the agreement has not only deprived McKensie of obtaining his land in an eligible portion of the country, but of all equivalent or compensation whatever for his headright certificate. The bill or petition concludes, that by reason of the fraudulent conduct of Hamilton, the agreement should be canceled, the agreement annulled and the certificate restored, as well as that the land, by virtue of the same located and surveyed, should be adjudged to be the property of the complainant."

The defendant Hamilton, by attorneys, demurred to the petition or bill of the complainant and set forth as grounds for so doing the following causes: (1) The bill does not declare that complainant ever tendered his portion of the expense as per agreement; (2) the bill shows McKensie to have had his remedy at law; and (3) that a venue is not sufficiently set out; concluding with a prayer for judgment.

The demurrer was sustained and bill dismissed; from which judgment of the court below the complainant appeals.

It is unnecessary for the court at this time to enter into a definitive construction of the argument between the parties to this suit; we have only to say that as regards the first exception to the bill, in the demurrer suggested, by reference to the contract or agreement it will be observed,

lections of laws of other countries, purporting to be printed and published by authority of such countries, are admissible to prove themselves. Burton v. Anderson, 1 T., 93; Martin v. Payne, 11 T., 292; Ellis v. Wiley, 17 T., 134; Texas Express Co. v. Beissner, 1 App. C., sec. 762; Patterson v. State, 17 T. App., 102; Fernandez v. State, 25 T. App., 538. Nature, validity, obligation, construction and interpretation of contracts are determined by the lex loci contractus, unless a different place is fixed by the parties for performance. Tinnen v. Mathews, Dal., 491; Huff v. Folger, Dal., 530; Scott v. Maynard, Dal., 548; Gautier v. Franklin, 1 T., 732; Hays v. Cage, 2 T., 501; Snoddy v. Cage, 5 T., 106; Andrews v. Hoxie, 5 T., 171, 189; Campbell v. Wilson, 6 T., 379, 390; Raymond v. Holmes, 11 T., 54; Hall v. Harris, 11 T., 300, 305; McLeod

that no *tender* was contemplated until the services were performed by Hamilton, to wit, the location of the lands on the Cypress; and the bill declares those services as yet unperformed. This objection to the bill is therefore invalid.

Upon the second cause of demurrer we would remark, that the fact of the fraud being such as might well form the subject for compensation by damages before a jury is not sufficient answer to a bill in chancery praying for relief by the remission of a contract. This we conceive to be a point well settled both in England and the United States; for as the court remarks in the case of Bogus Executor v. Grundy, 3 Peters, 210, "The law which abhors fraud does not permit it to purchase indulgence, dispensation or absolution." In the opinion of the court the allegations of the bill, if proved or confessed, are declaratory of fraud, and a fraud of that character which would justify the interference of a court of equity; whether the specific judgment prayed for by the complainant could well be founded upon them, is a question which we are not now called upon to decide.

The third and last point taken in the demurrer is "that there is not a sufficient venue set out." The suit was commenced in the county of Red River, and it was brought as well for the rescission of the agreement as to validate an equitable right to and obtain possession of the land. By reference to the bill it will be seen that the land is described as lying and being in the county of Red River. The fifth section of the act defining the powers and jurisdiction of the district court, passed December 22, 1836, Texas Laws, volume 1, page 194, declares "that no individual shall be sued other than in the county of his residence," with various exceptions; one of which is in the language of the statute, "Where land is the object of the suit." The venue is only to give the court jurisdiction, so far as the exercise of the same is confined to a particular territory. This bill is filed before "the Hon. John M. Hansford, judge and chancellor of the District Court for the Seventh Judicial District, next to be holden at Clarksville, within and for the county of Red River." This we conceive to be entirely sufficient.

We are unwilling, owing to the unsettled practice in the country both at law and in equity as regards demurrers, by this decree to determine that the demurrer filed in this case was intended by the appellee to be a confession on his part of all the allegations in the bill. (And we would remark that parties, pleading to any petition at law or in equity filed against them, should at once file every matter either of law or fact which they may deem necessary to this defense; and it will hereafter be the practice of this court to proceed as if such had been the case in the court below. We are compelled to the adoption of this rule to prevent the

v. Board, 30 T., 238; Cantu v. Bennett, 39 T., 303; Weider v. Maddox, 66 T., 372; Life Assn. v. Harris, 94 T., 25; Apollos v. Staniforth, 3 T. C. A., 502; Merrielles v. State Bank, 5 T. C. A., 483; Tilliard v. Hall, 11 T. C. A., 381; M. K. & T. Ry. v. Thompson, 11 T. C. A., 658; M. P. Ry. v. Harris, 1 App. C., sec. 1265. By place of performance. Ryan v. M. K. & T. Ry., 65 T., 13; Seiders v. Life Assn., 93 T., 194; Life Assn. v. Harris, 94 T., 25; Good v. Cald-

otherwise great delay in the prosecution of suits to final judgment.)   We
are therefore of opinion that the judgment of the court below should be
reversed and the case remanded for further trial—the appellee having the
privilege of answering further to the allegations of fact contained in the
bill.   And it is hereby so ordered and declared.

*Reversed and remanded*

## No. X.

### REPUBLIC OF TEXAS V. WILLIAM YOUNG.

#### (See Note 35.)

*Appeal from Red River County.*

BAYLOR, JUSTICE.—William Young, the appellee in this case, in the
year 1838 applied to the board of land commissioners for the county of
Red River for a certificate of headright for one league and labor of land,
and obtained the same; which certificate the investigating board of land
commissioners, appointed by an act of Congress passed January, 1840,
condemned as fraudulent; from this decision Young appealed to the Dis-
trict court, and there prayed that the judgment of said investigating
board might be reversed, and that a certificate be issued to him for one
league and labor of land.

The petition of the appellee, in order to sustain his claim to the land,
contains the necessary and usual allegations required by the Statute;
denies all causes of forfeiture, etc.; and among other things avers that
Young in the month of November, in the year 1835, being a married man
and the head of a family, was a resident citizen of the State of Missis-
sippi; that he was there possessed of real and personal estate; that he
sold all of the former and so much of the latter as he could not with con-
venience transport, with the intention of becoming a resident citizen of
Texas; that in the month of February, 1836, he arrived in the county
of Bowie, in said Republic, where he determined to domiciliate himself;
that he remained in said county from February, 1836, until the middle
of the month of March of the same year, when he returned to the State
of Mississippi for the purpose of removing his family to the said county
of Bowie, and returned with them to said county in the month of Novem-
ber, 1836.

That during the time of his absence from the State of Mississippi
until his return, to wit, from the month of January, 1836, until the
month of October of the same year, the family of the said petitioner were
visiting their relations, and had no other home than that of the said
Young; that he considered Texas his home from February, 1836, until

---

well, 11 T. C. A., 515; Applebaum v. Bates, 3 App. C., sec. 167.  If to be partly
performed in different States, intention of parties governs.  Ryan v. M. K.
& T. Ry., 65 T., 13.  Seems that marriage contracts are an exception to gen-
eral rule of lex loci contractus.  Shreck v. Shreck, 32 T., 578.  If subject of
contract is land, the lex loci rei sitas governs.  A mortgage executed without
the State, contrary to its laws of public policy, is void.  Cantu v. Bennett, 39

the present time. Upon an issue joined traversing the facts, the jury gave Young a verdict, and a judgment was rendered thereon in his favor in the court below, from which judgment the Republic appealed.

The question for our determination is, could Young from the foregoing statement of facts be considered as *residing* in Texas on the day of the declaration of independence, as the head of a family, so as to entitle him, within the provisions of the Constitution, to his headright for one league and labor of land.

The jury having found for the petitioner, we are authorized to conclude that the facts are as stated by Young; that he was in the Republic as a resident citizen on the day of the declaration of independence; that he arrived in it a short time before that eventful period and left for Mississippi shortly thereafter, with a view of bringing his family on to Texas. These facts being established, we think that the petitioner, both by the Constitution and the law as it then existed, is entitled to land as a headright claimant.

It was contended in argument that as Young was in the Republic so short a time before the declaration of independence, and having quitted it immediately thereafter, he could not be considered as domiciliated in Texas and therefore ought not to have the land claimed by him. The question of domicile is often a very delicate and nice one. In consulting the authorities, however, on this point, we find one of the rules as to domicile to be this : It is of no consequence in such a case how short his residence may have been, for it is the *fact* coupled with the *intention* that settles his *domicile*. And here the jury have substantially found both that Young was not only a resident citizen of the Republic on the day of the declaration of independence, but that he was so at that time with the intention of remaining (animo manendi). This made Texas instantaneously his place of domicile. He was therefore entitled to land as an emigrant; and the only remaining question is, to what quantity, as his family was at that time in the State of Mississippi, without any fixed habitation. Mr. Justice Story, in his fourth rule on this subject states (page 44, Conflict of Laws), "that a married woman follows the domicile of her husband." This results from the general principle that a person who is under the power and authority of another possesses no right to choose a domicile. The absence, therefore, of the wife, at the time alluded to, especially as she had no fixed home in the State of Mississippi, could not affect the petitioner's right as to the quantity of land he was entitled to by the Constitution and law then in force. From these con-

---

T., 303; Fowler v. Bell, 90 T., 150. Contract valid under lex loci contractus is valid everywhere, unless in contravention of lex fori. If void under lex loci contractus, void everywhere. Andrews v. Hoxie, 5 T., 171, 189; Shelton v. Marshall, 16 T., 344; Ryan v. M. K. & T. Ry., 65 T., 13; Weider v. Maddox, 66 T., 372; Fowler v. Bell, 90 T., 150; Tuckett v. Herdic, 5 T. C. A., 690; T. & P. Ry. v. Davis, 2 App. C., sec. 191. If lex loci contractus is not alleged and proved, lex fori will be applied. M. K. & T. Ry. v. Cocreham, 10 T. C. A., 166. Whether a writ is wrongfully sued out, is determined by the laws of the State where it was obtained. Wiley v. Trawick, 14 T., 662. Where husband and wife move from one State to another, title to property acquired before removal is determined by the laws of the former. Parks v. Willard, 1 T.,

siderations, coupled with the fact that Young has ever since remained with his family in Texas, we are of opinion that the judgment ought to be affirmed.

*Affirmed.*

## No. XI.

### Thompson, Morton and Payne v. Wiley Harrison.

#### (See Note 36.)

*Appeal from Red River County.*

JACK, Justice.—This was an action brought in the District Court by Harrison, administrator of Joseph Thompson, against the defendants in the court below, to recover $800 upon a note executed by them and made payable to William Walker, and by Walker indorsed to plaintiff's intestate. The defendants pleaded failure of consideration and alleged "that the note sued on was given as a wager upon the election of a member of Congress." The jury found for the plaintiff. The statement of facts shows, "that it was admitted by the plaintiff that the consideration was a bet won upon a county election for members to Congress." It was also admitted on both sides "that the parties to the note were all citizens and freeholders of the county." The court instructed the jury "that the consideration was sufficient in law to entitle the plaintiff to recover. That betting upon an election was an exercise of judgment and not so manifestly contrary to public policy as to authorize the courts to declare it so!" To this charge of the court to the jury the defendants excepted.

We have examined the authorities cited by appellants, and abundant others are to be found establishing the principle that contracts of this kind are contrary to good morals and against public policy.

Vide 2 Pothier on Obligations, Appendix, p. 6; 1 Term Rep., 56, 60. Allen v. Heam, 7 Johns., 434; Mount and Wardell v. G. and R. Waite.

The judgment of the district court must be reversed.

*Reversed.*

## No. XII.

### A. C. Horton v. R. Jones

#### (See Note 37.)

*Appeal from Matagorda County.*

HUTCHINSON, Justice.—It is not necessary farther to state the case than that Horton filed his bill to enjoin a judgment obtained by Jones against him. Jones answered, denying the equitable matters contained in the bill; but not reserving exceptions by way of demurrer to

---

350; Warren v. Dickerson, 3 T., 460; McIntyre v. Chappell, 4 T., 187; Nimmo v. Davis, 7 T., 26; Avery v. Avery, 12 T., 54; Vardeman v. Lawson, 17 T., 10; Walace v. Burden, 17 T., 467; Hawkins v. Lee, 22 T., 544; Powell v. De Blanc,

any insufficiency in the bill in not laying a ground for equitable interposition by showing causes that prevented defense at law. The answer simply negatives the, facts constituting the equity in chief and puts no grounds of demurrer.

The answer was filed a few days before the term at which the case was decided, and plainly too late to enable the plaintiff to get the witnesses in the same county, or the depositions of more distant witnesses in support of the bill and in opposition to the answer. We do not go so much on the affidavit for a continuance, for we have not yet decided whether the refusal of a continuance may be assigned for error, but the affidavit evinces the wish of the plaintiff to have the case stand over in order to proof, and it were due to justice to permit it.

When an answer is perfectly responsive in a bill for injunction and in negation of its equity, it is proper to dissolve the injunction; but then the judgment—plaintiff must be required under the statute to give a refunding bond, if the complainant wish the bill to stand over as an original bill. Here the case ought to have been continued to enable the plaintiff to prove, if he might, the matters of his bill denied by the answer, and the respondent should have been ordered to give the refunding bond as a condition precedent to obtaining the benefit of his judgment at law. Let the decree be reversed and the cause be remanded, with permission to the parties to take testimony.

*Reversed and remanded.*

## No. XIII.

### SLOO & BYRNE V. POWELL AND OTHERS.

#### (See Note 38.)

*Appeal from Matagorda County.*

HUTCHINSON, JUSTICE.—This is a voluminous case terminating in one question, arising upon the act regulating attachments, of January 28, 1839.

On the 23d February, 1839, the appellants as a mercantile firm filed their petition, alleging that Powell, on the 24th January, 1837, made three promissory notes to Foster, due at sixty, ninety and 120 days, for sums that amounted in principal to $3962.13; that they were indorsed by the payee to the plaintiffs, who deposited then in the Commercial Bank of New Orleans for collection; that at their maturity respectively, due diligence through a notary was exerted in order to charge the maker and indorser, the evidences whereof are exhibited; that the time of suing, Foster, the indorser was itinerant, without domicile, but then in Matagorda Bay, with goods enumerated, on board the schooner Texas, part of

---

23 T., 66; Keyser v. Pilgrim, 25 T. Supp., 217; McCulloch v. Renn, 28 T., 793; Oliver v. Robertson, 41 T., 422; Blethen v. Bonner, 93 T., 141; Burnham v. McMichael, 6 T. C. A., 496; Clardy v. Wilson, 24 T. C. A., 196. Title to property given to either of them while migrating from one State to another is

which goods were in the possession of Belknap, a citizen of that county, who had colluded to alter the manifest of the goods or ship, so as to make them appear to be his; and praying that Powell, Foster, Belknap, with Shackelford, the master of the schooner, should be impleaded; presenting interrogatories to the two latter persons; that an attachment should be issued; that the defendants should be decreed to pay the amount, etc. Byrne, one of the plaintiffs, on the same day (February 23, 1839) made affidavit as the basis of the attachment against the goods, and gave a bond, with a surety, payable to *all* of those impleaded, with condition substantially conforming to the bond prescribed in the statute referred to.

On the same day citations were issued, all of which were served; and an attachment against Foster's estate was also issued, and on the day following was levied. On May 31, 1839, Foster replevied the goods by giving bond of that date to both plaintiffs in the penalty of $8000. At October term, 1840, the bond to prosecute the attachment was quashed and a new bond ordered to be given nunc pro tunc; and the exceptions taken to that action of the court shows that the ground assumed for quashing was that the bond was not given alone to the actual defendant, Foster. There was a motion to quash the attachment but it was overruled. On the 16th October, 1834, the new bond required was given by Byrne as principal, with a surety in the penalty of $8000, payable to Foster, his heirs, etc., and to be void on condition such as is prescribed in the attachment law. On the 6th October, 1841, on the seventh and eleventh days of that month successively, the court below quashed the last bond, on the ground that it was not signed by all the plaintiffs; from which they prayed an appeal. The attachment was quashed for want of sufficient bond, and it was decreed that the plaintiffs should recover of Powell and Foster the amount of the notes with interest on each, from their maturity, with costs. The only question raised in the court below or presented on the brief of the counsel for revision here is, whether the district court erred in quashing the last bond.

The suit originated at a period when the Spanish law, based on the civil law was in force here; and it is manifest from the verbiage of the attachment and of both bonds, that the act concerning attachments of the 28th January preceding, was promulgated at Matagorda and was before the counsel of the plaintiff at the filing of the petition.

It will be recollected, too, that the principles of the English jurispru-

determined by the laws of the latter. State v. Barrow, 14 T., 179. Property acquired while temporarily sojourning in another State is determined by the laws of their domicile. Edrington v. Mayfield, 5 T., 363. Purchaser of wife's separate property from husband, or through execution sale against him, with notice of wife's rights, takes no title against her. Parks v. Willard, 1 T., 350; Bennett v. Cocks, 15 T., 67; Smith v. Boquet, 27 T., 507; Kirk v. H. D. N. Co., 49 T., 213; French v. Strumberg, 52 T., 92; Morrison v. Clark, 55 T., 437; Baker v. Baker, 55 T., 577; Cline v. Upton, 56 T., 319; John v. Battle, 58 T., 591; Legierse v. Moore, 59 T., 470; Parker v. Coop, 60 T., 111; McKamey v. Thorp, 61 T., 648; Ross v. Kornrumpf, 64 T., 391; Kempner v. Comer, 73 T., 196; Montgomery v. Noyes, 73 T., 203; Evans v. Welborn, 74 T., 530; Parker v. Fogarty, 4 T. C. A., 615; Clardy v. Wilson, 24 T. C. A., 196. If purchaser has no notice of wife's rights, he takes a good title against her. Mitchell v. Marr, 26 T., 329; Cooke v. Bremond, 27 T., 457; Kirk v. H. D. N. Co., 49 T.,

dence regulating the course of civil prosecution, and separating the ordinary from the extraordinary form, had not been introduced. The court had cognizance of the subjects or matters of the complaint; and as the parties have stirred no other question here, we may proceed singly and at once to inquire, was the last bond valid under the attachment law? We think it was, and that the court below erred in quashing it.

The inquiry leads us into an examination of the first bond, and the disposition made of it. By the law existing when it was given, a plaintiff might implead all the persons connected with the transaction, and was not put on the strict rule of the common law requiring that in an action ex contractu only those bound or liable should be sued, and those, too, liable in the same degree. Here as well the maker as the indorser of the notes were sued; and so were Belknap and Shackelford upon alleged interest in the goods of Foster, or fraud and collusion with him concerning them. We are therefore not prepared to say that the first bond was such as afforded the principal defendant, Foster, no available security. Indeed we believe that in view of the law then prevailing it was valid security, so that although the court below erred in quashing it, there was no error in the refusal to quash the attachment; and as the security required by the defendant Foster was afforded by the new bond ordered by the court, he ought to have been contented with it, especially if in all other respects it conformed to the requisitions of the attachment act and was such as his motion recognized as good. It is true, as urged by the appellee's counsel, that attachment laws whose operation is in rem, being mostly ex parte, should receive a rigid interpretation, and should not be applied to cases not within their plain and obvious meaning. It is also true that at common law one partner can not bind his associate without his consent, by signing the associative name to a seal; for in that case, only he who signs is bound. And though this rule did not apply to the bond in question, it may be conceded that the name of Byrne, as in favor of the obligee, did not in any degree bind Byrne's partner. By the act, however, the party or his agent, attorney or factor might take the oath required to obtain the attachment; and if the agent, attorney of factor might make the affidavit, assuredly one of the plaintiffs might make it. So, too, with the bond. It was allowed to be given by the plaintiff, his agent, attorney or factor; and if it was sufficient for a third person as agent, attorney or factor to give it, was there, or can there ever be, any reason why one of the plaintiffs should not give it? What was the object? To furnish the adverse party a collateral security that should be sufficient. It could never be pretended that either of the obligors could

213; McKamey v. Thorp, 61 T., 648; Ross v. Kornrumpf, 64 T., 391; Rousel v. Stanger, 73 T., 670; Stiles v. Japhet, 84 T., 91; Kirby v. Moody, 84 T., 201; Coleman v. Bank, 94 T., 605; Russell v. Nall, 2 T. C. A., 60; Sanburn v. Schuler, 3 T. C. A., 629; Sinsheimer v. Kahn, 6 T. C. A., 143; Swink v. League, 6 T. C. A., 309; Watts v. Corner, 8 T. C. A., 588; Coleman v. Bank, 17 T. C. A., 132; Hord v. Owens, 20 T. C. A., 21; Kilgore v. Graves, 2 App. C., sec. 410; Ross v. Dailey, 1 U. C., 251. Must be a purchaser for value. Barnes v. McArthur, 4 T. C. A., 71. Purchaser who is a creditor of husband and credits amount of bid on judgment, is not an innocent bona fide purchaser as to the wife. Deles-

ever urge as an objection to a recovery on the bond that the partner of the principal obligor was not joined. In Cayce v. Curtis and Cayce v. Horton, January, 1841, we decided that a seal was not required to render an instrument given as a statutory bond obligatory, previous to the introduction of the body of the common law; and that as the party had chosen to bind himself, so he should be bound. Holding it proper to give a strict construction to the act, we yet consider that under its third section, if either or any of several plaintiffs executes a good and formal bond, with sufficient surety or sureties, it is a security *by* the plaintiffs, although *all* of them do not sign as principals; and is as available a statutory security as if given or furnished by an agent, attorney or factor. Foster had been cited, had replevied the goods attached, and as the object of the process was to bring him into court or reach his property, it was too late to move to quash the attachment at the term next after the return term. The statute authorizes a plea in abatement, and that ought to have have been filed at the first term. A motion to quash is indeed in the nature of that plea and ought to be made with equal diligence. We are not prepared, however, to say that if a plaintiff in an attachment case is prepared and offers to give such bond as the court may require for the perfect security of the defendant, and if this be done previous to the decision of such motion or plea, it ought not to be received. The current of modern decisions seems to allow it to be done generally, because the object of the bond is to secure collaterally the obligee, and because there should be but one suit, if possible, on the same demand or complaint. If a defendant in an attachment be not cited, we should proceed with strictness and vigilance for his security.

The appellants, therefore, on these principles must be restored to their rights under the levy of attachment and replevy bond; but as the case has not been tried on a plea to the merits, but has been decided erroneously in part below on preliminary questions, the judgment must be set aside and the cause remanded. We will not omit noticing that in the judgment rendered it was particularly proper not to compound the interest, but to give judgment for it from the dates of the maturity of the notes, respectively, until payment.

*Reversed and remanded.*

Concurred in by Chief Justice John Hemphill, Judge R. E. B. Baylor and John T. Mills. Judges R. Morris and C. P. Jack dissenting.

pine v. Campbell, 52 T., 4; Wallace v. Campbell, 54 T., 87; Bonner v. Stephens, 60 T., 616; McKamey v. Thorp, 61 T., 648; Stoker v. Bailey, 62 T., 299; Ross v. Kornrumpf, 64 T., 390; Yoe v. Montgomery, 68 T., 338; McCutchen v. Purinton, 84 T., 603; Russell v. Nall, 2 T. C. A., 64; Cleveland v. Mills, 6 T. C. A., 479; Burnham v. McMichael, 6 T. C. A., 496; Cobb v. Trammell, 9 T. C. A., 527; Brown v. Marwitz, 10 T. C. A., 458; Mexia v. Lewis, 12 T. C. A., 102; Aultman v. George, 12 T. C. A., 457; Ryan v. Engelson, 26 T. C. A., 192.

**Note 22.**—Andrews v. Andrews, p. 427.

An appeal does not lie from an interlocutory decree or judgment nor from a judgment that does not settle all the issues as to all of the parties. Soy v. McMullen, Dal., 363; Robinson v. Bailleul, 2 T., 160; Ewing v. Kin-

## No. XIV.

### SELKIRK v. BETTS & CO.

(See Note 39.)

*Appeal from Matagorda County.*

HUTCHINSON, JUSTICE.—Betts & Co. made their note to McLellan of November 2, 1839, payable at one day. After maturity it was assigned to Selkirk, having credits on it reducing it to $178.16. The assignee sued the makers to recover that residue. They pleaded payment before suit, without stating to whom. The court instructed the jury that a set-off or failure of consideration was a good defense against the assignee suing on a note assigned to him after its maturity, and that in regard to any promise made to the assignee after transfer to pay the note to him, it was a new contract on which he should have sued, so that the testimony on that score should be disregarded. The jury found that the makers were entitled to a set-off, at or before the transfer of the note, to $208.13, but that after transfer they promised the holder to pay the note. The judgment on this verdict was for the costs of the defendants. Without noticing specially the points presented on the brief of the learned counsel, we will state the principles we think applicable to the case. The Act of 1840, concerning negotiable instruments, discounts and set-offs, should not have been consulted as the rule of decision. Legislation affecting rights can not be retrospective, though enactments changing the remedies may be enforced upon pre-existing rights. The rights of these parties were and still are determinable according to the civil law, because the note and evidences of payment or set-off on the transcript seem to have arisen prior to the act mentioned, and to that introducing generally the English common law.

The suit was well brought on the note. It was not necessary for the plaintiff to have noticed any subsequent promise of the makers to pay its amount or the balance to him; on the contrary, if the defendants had actually paid the note to the payee before notice of transfer, testimony of the fact would have been admissible under the plea of payment pleaded, and evidence of the promise would have been good countervailing proof if it had been made by the defendants when not under mistake of the facts or of their rights. If the defendants relied on a cross-demand, matured against the payee before notice of assignment, they ought to have pleaded it, so as to have notified their adversary. He then could have replied the subsequent promise to pay him or given evidence of it. In reference to the requisites of the allegata, a promise to pay a debt barred by prescription, or a statute of limitation, or a promise to pay to the assignee or

nard, 2 T., 163; Gross v. McClaran, 8 T., 341; Hicks v. Gray, 25 T., 82; Martin v. Crow, 28 T., 613; Simpson v. Bennett, 42 T., 241; Taylor v. Fore, 42 T., 256; Rodrigues v. Trevino, 54 T., 198; Linn v. Arambould, 55 T., 611; Whitaker v. Gee, 61 T., 217; Bradford v. Taylor, 64 T., 169; Wootters v. Kauffman,

holder of a chose in action is not a new contract, nor is there any need for a new or cumulative cause or consideration to support it, although it has been sometimes so decided; it is only a recognition of a subsisting obligation, for in the one case, though the remedy is precluded by lapse of time, the morality of the duty to be performed remains; and in the other, the party is presumed to have either no defense or to have waived the assertion of it.

In the case before us the court below erred in permitting evidence of a counter demand without an allegation on which to support it; in charging the jury that the plaintiff ought to have averred the promise to pay the note; and in not instructing the jury in regard to the traits necessary to give vitality to such promise. Such promise in order to be effectual must be understandingly made. If the makers of this note when ignorant of the fact of an existing cause of cross-action, or when laboring under a delusion or misconception of their right to avail of it, promised payment to the holder, it was precisely such a promise as no just law ought to enforce; but if made upon knowledge of the fact and of their right, it gave efficacy to the note in the hands of the holder, and the makers must resort to the payee, their debtor on their account. This principle of the Roman, Spanish, English, and we may say American law, is too firmly established to be controverted. It has been adopted as a doctrine of Texian jurisprudence in the case of Hall v. Phelps, January, 1841. The judgment, therefore, must be reversed and the cause remanded.

This cause coming on the heard on the transcript of the record in the District Court of Matagorda, and it being inspected and the arguments of counsel heard, because it seems to the court here that there is error in the judgment below, it is therefore considered that the same be reversed; that this cause be remanded, with discretion to the said district court to allow the appellees to plead farther to the merits, and thereupon to try the cause upon the principles in this court declared; and it is further considered that the appellant recover of the appellees his costs herein in this court expended; and that this decision be certified below for observance.

*Reversed and remanded.*

67 T., 488; Lumber Co. v. Williams, 71 T., 444; Mignon v. Brinson, 74 T., 18; M. P. Ry. v. Scott, 78 T., 360; Darnell v. Lyon, 85 T., 455, 465; Land Co. v. Winter, 93 T., 560; R. R. Commission v. Weld & Neville, 95 T., 278 (overruling R. R. Commission v. Weld & Neville T. C. A., U. R. C., 1902); Mills v. Paul, 1 T. C. A., 419; Mills v. Paul, 4 T. C. A., 503; State National Bank v. Waxahachie National Bank, 14 T. C. A., 143; Davis v. Martin, 15 T. C. A., 62; Walker v. Mears, 28 T. C. A., 210; Lay v. Bellinger, 1 App. C., sec. 24; Giersa v. Yocum, 1 App. C., sec. 310; Stephenson v. Tennant, 1 App. C., sec. 543; Wheeler v. Davis, 3 App. C., sec. 13; Carswell v. Crowther, 4 App. C., sec. 153; White v. Smith, 4 App. C., sec. 225; Wadley v. Johnson, 2 U. C., 739; Masterson v. Williams (T. Sup.), U. R. C., 1889; Frank v. Tatum (T. C. A.), U. R. C., 1892; Burch v. Burch (T. C. A.), U. R. C., 1894; Burrows v. Cox (T. C. A.), U. R. C., 1896; Davis v. Martin (T. C. A.), U. R. C., 1896. In such cases, appellate courts will dismiss the appeal on its own motion. Messner v. Lewis, 17 T., 519; Holek v. Varona, 63 T., 65. When one of the defendants dies before trial, it will be presumed in favor of finality that the case was dismissed as to him. Smith v. Wilson, 18 T. C. A., 24. Appellate court may revise an

## No. XV.

### JOHN SMITH v. THE REPUBLIC.

*Appeal from Liberty County.*

JACK, JUSTICE.—The appellant, John Smith, was at the fall term of the District Court for Liberty County indicted and tried for the murder of James West. Upon the trial in the district court the defendant's counsel moved the court to instruct the jury "that the indictment was, as it was framed, an indictment for manslaughter only and not for murder," which instruction the court refused, and charged the jury "that it was an indictment for murder, and that upon the bill the defendant might be convicted of murder." To this opinion of the court the defendant by his counsel excepted.

The only question which we deem it necessary to determine in this case is, was this indictment for murder or manslaughter?

The second section of the act punishing crimes and misdemeanors provides "that every person of sound mind and discretion, who shall willfully and maliciously kill any person, shall be deemed guilty of murder," etc.

The indictment before us was framed under this statute, and containing the usual requisites, concludes with these words, "and so the jurors aforesaid upon their oath aforesaid do say, that the said John Smith, him the said James West in the manner and by the means aforesaid, feloniously, willfully and maliciously, did kill and murder."

It was well settled that an indictment under a statute must follow and conform to the statute in stating the offense.

The indictment before us we think is strictly in accordance with the provisions of the statute before alluded to. It is an indictment for murder, and the judge did not err in his charge to the jury. The judgment of the district court is therefore affirmed.

*Affirmed.*

## No. XVI.

### STOCKTON v. MONTGOMERY.

(See Note 40.)

*Appeal from Colorado County.*

HUTCHINSON, JUSTICE.—The main question, whether the Act of January 19, 1841, constituting the territory of Ward, conforms to the Constitution, is plainly, directly and formally presented for our determination. If we hold it to be a valid act, the territory of Ward will

interlocutory order of lower court refusing to proceed with the cause, and correct errors by mandamus. Kleiber v. McManus, 66 T., 48; Schultze v. McLeary, 73 T., 92; Grigsby v. Bowles, 79 T., 138; Fannin County v. High-

have passed through all the prescribed ordeals, and its future course as
a civil division of the nation may not be disturbed on the question now
to be adjudicated.   If a majority of this court can not validate the act,
or a majority shall decide that it is in conflict with the constitutive law,
then we are to solve a secondary proposition, whether an act passed by
the senate and house of representatives, carrying out a civil division of
the Republic, is a political act that is final, conclusive, and not receivable
by the judiciary.

1.   I will consider if the act be constitutional.   Dismissing all pre-
lude about the importance of the subject and the consequences of its
judicial solution, and desiring to bring into the investigation a mind
directed honestly, anxiously and exclusively to the question, unawed by
present or future extraneous considerations, I will speak frankly, respect-
fully and courteously of the legislative and executive branches of the
government, but always in the spirit of the maxim, "Veritas nihil vere-
tur, nisi abscondi."

Opening the Constitution and grouping the sections concerning coun-
ties and the representatives and functionaries of counties, we may more
clearly discern how they harmonize, what they establish, what they for-
bid.   "The house of representatives shall not consist of less than twenty-
four nor more than forty members, until the population shall amount to
one hundred thousand souls; after which time the whole number of
representatives shall not be less than forty nor more than one hundred;
provided, however, that each county shall be entitled to at least one
representative."   Const., art. 1, sec. 5.

"The clerks of the district courts shall be elected by the qualified
voters for members of Congress in the county where the courts are estab-
lished."   Id., art. 4, sec. 6.

"There shall be in each county a county court, and such justices'
courts as the Congress may from time to time establish."   Id., sec. 10.

"The Republic shall be divided into convenient counties, but no new
county shall be established, unless it be done on the petition of one hun-
dred free male inhabitants of the territory sought to be laid off and
established, and unless said territory shall contain nine hundred square
miles."   Id., sec. 11.

"There shall be appointed for each county a convenient number of
justices of the peace, one sheriff, one coroner, and a sufficient number
of constables," etc.   Id., sec. 12.

"The Republic of Texas shall be divided into convenient judicial dis-
tricts, not less than three nor more than eight; there shall be appointed
for each district a judge, who shall reside in the same, and hold the
courts at such times and places as Congress may by law direct."   Id.,
sec. 2.

tower, 9 T. C. A., 293; Schintz v. Morris, 13 T. C. A., 580.   After final judg-
ment, interlocutory may be revised on appeal.   Gross v. McClaran, 8 T., 341;
Stewart v. Jones, 9 T., 469; Stewart v. State, 42 T., 242; Holek v. Varona,
63 T., 65; O'Neal v. Bank, 64 T., 644; Fort Worth Ry. v. Rosedale Ry., 68 T.,
163.   Act of November 1, 1871 (Gammel's Laws of Texas, vol. 7, p. 17),
(474)

"Until the first enumeration shall be made, as directed by this Constitution, the precinct of Austin shall be entitled to one representative, etc. Id., art. 7, sec. 6.

The framers of the Constitution must be understood to have employed words in their natural sense, and to have *intended what they said;* and to ascertain the powers granted or objects declared, the only rule is to consider the language of the charter granting or defining them. All will agree to this. It is the first process suggested to every intelligent and pure mind; it is a natural impulse; and it is a rule of judicial action declared in the great case, Gibbons v. Ogden, 9 Wheaton, 1, 5 Cond. Rep., 562. Another rule coeval with jurisprudence is that the written positive law shall be so construed as to be rendered operative; and that that and all the provisions on the same subject shall be considered together and made to harmonize, if reasonably and justly they may; and moreover, that the utmost reasonable, just and practicable effect and scope shall be given to each. This no one can controvert. Now all the sections quoted are exceedingly plain. It seems to me that no one can misunderstand them. There is no obscurity on which to ponder and doubt. There is no ambiguity to be explained; nor is there *now* any perceivable conflict. There was in the formation of the instrument an accidental incongruity, but it ceased with the adoption of the instrument, and it is now wholly unimportant; it is this: the minimum of representatives in the house according to the first clause is twenty-four, and by the last it is thirty-two. But as the last is couched in terms of limitation as well as the first, and is moreover more specific than the first, we should regard the last as declarative of the true minimum; and this, too, because it was favorable to a more numerous representation. If the Convention contemplated a period when Congress might reduce the number to twenty-four, it precluded that result by giving to the territory then embraced by the existing precincts thirty-two, until the enumeration should be made as directed by the Constitution—an enumeration nowhere indicated, unless by the first clause in order to the ascertainment of the 100,000 souls. The minimum of twenty-four, therefore, was superseded by that of thirty-two by the instrument itself.

In every other particular the sections quoted harmonized, and each can be rendered fully operative. The second section of the fourth article could be enforced until the population should become so immense, and the eight districts, as the highest number of judicial districts, so crowded with people and consequent litigation as to render the maximum of eight for such districts incompatible with the term *convenient,*

---

authorizing appeals from interlocutory judgments, held void. Ward v. Ward, 37 T., 389; City of Paris v. Mason, 37 T., 447; Dial v. Collins, 40 T., 367. Nor from an order overruling motion for new trial, nor until after final conviction. Shannon v. State, 7 T., 492; Lawrence v. State, 14 T., 432; Burrell v. State, 16 T., 147; O'Connell v. State, 18 T., 343; Calvin v. State, 23 T., 577; Nathan v. State, 28 T., 326; Dooly v. State, 33 T., 712; Murray v. State, 35 T., 472; Fulcher v. State, 38 T., 505 (overruling Nelson v. State, 32 T., 71; Hoppe v. State, 32 T., 388); Mayfield v. State, 40 T., 289; Anschincks v. State, 43 T., 587; Young v. State, 1 T. App., 65; Smith v. State, 1 T. App., 408; Butler v. State, 1 T. App., 638; Choate v. State, 2 T. App., 302; Butler

and to require an amendment of the Constitution in order to the execution of the laws and the administration of justice. So the sixth section of that article is not only enforcible, but expressly explodes as impossible the assumption that there can be a county without a representative; for if the clerk of a district court is to be elected by the qualified voters of the member of Congress in the county where his court is established, it follows that his county must have a member in Congress, thus plainly showing what the Convention clearly expressed in the first section in review, that in all cases—as a continuous limitation and essential element in the structure of counties—"each county shall be entitled to at least one representative." The tenth section of the fourth article can operate harmoniously with the first section in giving a county court and justices' courts as the third and fourth elements of a regular county; and so of the twelfth section of the fourth article in giving other county officers as a fifth element—a sheriff, a coroner, justices and constables. Coming to the eleventh section of the fourth article, we find the sixth and seventh components of a county,—it must have at least 100 free male inhabitants, and must contain at least 900 square miles in area; these are the minima in relation to its population and territory. Now as in mathematical demonstration and physical science we say of a given space that is divisible, or of a body composed of parts, that any number of the fractions or components of the whole is not the entirety, so in constitutional law, it is an axiom that though six out of seven of the elements required to constitute an institution be given, if the seventh be denied, the institution is not created, but the attempt to form it a nullity. The act denies to the territory of Ward a separate representative, the first, the highest and the most important right of a county.

I have thus assumed as the natural sense and plain meaning of the fifth section of the first article, that each county at each period mentioned, at all times during the subsistence of the Constitution, must have at least one representative. Look again at that section. It is but one sentence. The idea it expresses is distinct and clearly the same to every intelligent reader at the first perusal. It fixes the minima and maxima of representatives during two epocha: the first, that *before* the population shall amount to 100,000, and the second, that *after* that event or attainment, and concludes with a limitation alike applicable to both; the number shall be so and so until that event, after which it shall be specified—"provided, however, that each county shall have a representative." No philologist could express the same idea or train of ideas in simpler or clearer phrase. If the limitation of the county right is to be

v. State, 2 T. App., 529; Robinson v. State, 3 T. App., 47; Lablaite v. State, 4 T. App., 169; Pennington v. State, 11 T. App., 281; Darnell v. State, 24 T. App., 6. In the following instances, judgments are not final and can not be appealed from: (a) Only for costs. Hanks v. Thompson, 5 T., 6; Warren v. Shuman, 5 T., 441; Scott v. Benton, 6 T., 322; Hancock v. Metz, 7 T., 177; Bradshaw v. Davis, 8 T., 344; Fitzgerald v. Fitzgerald, 21 T., 415; Martin v. Wade, 22 T., 224; Holt v. Wood, 23 T., 474; Green v. Banks, 24 T., 522; Neyland v. White, 25 T., 319; Patterson v. Hall, 30 T., 464; I. & G. N. Ry Co. v. Smith County, 58 T., 74; Eastham v. Sallis, 60 T., 576; American, etc., Co. v. City of Crockett (T. C. A.), U. R. C., 1899. (b) Overruling motion to

understood as applying to both epocha, as is the natural and obvious import of the words and the structure of the whole sentence, there is no need of any other word or words to be introduced by implication, for the meaning is perfect from the words used; and we have seen that according to one of the highest authorities we must adopt the natural sense of the provision. We have seen, too, that by taking the section to mean what it manifestly declares, it can operate effectually and in harmony with every other section and clause of the Constitution.

If we assume that the concluding limitative clause of the fifth section of the first article applies only to the second epocha, what follows? First, to do so, we depart from the rule of right reason declared in Gibbons v. Ogden. Secondly, we are constrained to add words to a sentence already perfect, and radically change its natural import; and that, too, to produce discord instead of harmony, for if the Convention intended the limitation to refer to the clause giving the second epoch, and to that alone, the concluding words would have been "provided that in the latter case," and not "provided, however, etc.," or some equivalent qualifying word or phrase. Thirdly, on that violent interpretation the sixth section of the fourth article would have been rendered inoperative during the first epoch; for until the population should amount to 100,000, as counties might be formed without representation, so district clerks for such counties would have to be elected by voters not entitled to elect a representative. Fourthly, as only eight judicial districts and a judge for each could be had, the judicial counties could be so multiplied as to render the official duties of the judges too oppressive to be performed, and thus under a mere coloring of the Constitution the Legislature could subvert the judiciary, when the grand object of the Constitution was to organize and perpetuate a government of three co-ordinate but independent branches. Thus the number of counties could have been extended to 104, or thirteen to each judge; and giving one week's court twice a year to each county, he would have been put in the stirrup six months each year to hold the district courts alone. But the counties could have been increased indefinitely until a national assembly should have been found sole occupants of the citadel, to make, expound and execute the law! The Convention did not open this door to encroachment. Fifthly, to show that it was intended that at all times each county should be separately represented, at the commencement no precinct was left unrepresented. Sixthly, there are four civil divisions of the Republic named, three of which are for judicial and other purposes: first, senatorial districts, one of which may consist of two or more counties, the district of a representative being only

quash writs of certiorari and attachment. Messner v. Lewis, 17 T., 519; Hamman v. Lewis, 34 T., 474; Holek v. Varona, 63 T., 65. (c) Quashing writ of sequestration. Little v. Morris, 10 T., 263. (d) Quashing indictment. State v. Paschal, 22 T., 584; State v. Thornton, 32 T., 104. (e) Order granting change of venue and order remanding case to court granting it. Wygall v. Treasurer, 33 T., 328; Vance v. Hogue, 35 T., 432. (f) Refusal to enter final judgment on verdict. Lane v. Ellinger, 32 T., 369. (g) Order of justice of peace dismissing suit for want of prosecution. Morgan v. John-

one county; then the judicial districts, to be composed of counties; then counties; and lastly company beats, or justices' precincts. So far as divisions are expressly required, none others for the same purposes can be established—for expressio unius est exclusio alterius. Those required must be organized and kept, each as nearly equal to one another as practicable, and all alike for the same purpose. Now look at the confusion of such a county as Ward. It is invested, we may assume, with a full machinery of judicial administration and internal economy and police, for so from the words of the act it would at first seem; but when its citizens assemble as electors of a representative to Congress, its own officers do not order and conduct the election, for here in one quarter of Colorado and in another Matagorda takes the power and sends her sheriff, judges and clerks of election; Ward being subjected to two extraneous powers and civil platoons of officers, and her people separated into squads, voting not for one but for two members of Congress from different counties. If such a judicial county were formed on the point of intersection of four regular counties, the confusion would be duplicated. Were these confusion and confliction of lines, powers and rights intended by the Constitution? That it was intended in fact by the Convention is perfectly incredible. But how are rights affected? Has James S. Montgomery the same privileges and benefits, arising from and protected by the Constitution and laws, that are enjoyed by any citizen of Colorado? Can he exercise and enjoy all of his constitutional and civil rights in the same degree—under equal circumstances? Plainly and certainly not. He approaches the ark of liberty—the ballot box—not in community with his compeers, with whom he actually is associated in the performance of all his other municipal and domestic relations, but in a corner and in conjunction with strangers and under a distant and separated surveillance. Not so the man of Colorado. The inequality is marked. Again, are his advantages in a county not separately represented by a member bound to utter and vindicate in the national hall the distinct interests and instructions of himself and compeers equal to those he might enjoy under such separate representation? Plainly and certainly not.

Then *all* his municipal and social rights are impaired. He is sued in Ward territory. He says he is a citizen resident in Colorado County, a civil division duly made and fully represented; but that his domicile has been unlawfully separated from it, and though he occupies the same locality, it is disfranchised. Is not this true? And what is the true name and nature of the right thus violated? It is evidently a municipal

son, 4 T., 117. (h) Order dismissing petition of intervention. Stewart v. State, 42 T., 242. (i) Order granting motion to remove cause to Federal Court. Appeal lies from refusal of motion. Rosenfield v. Condict, 44 T., 464; Durham v. Southern L. I. Co., 46 T., 182; Walker v. Howard, 10 T. C. A., 611. (j) Judgment against sureties alone on bail bond, and refusal of judgment on. Moore v. Schooner Anna Maria, 11 T., 655; Cox v. State, 34 T. Cr., 94. (k) Order allowing continuance. Dow v. Hotchkiss, 2 T., 471; Tinsley v. Trimble, 35 T., 425; Taylor v. Fore, 42 T., 256. (l) Granting new trial. Stewart v. Jones, 9 T., 469; Huston v. Starr, 12 T., 424; Goss v. McClaran, 17 T., 107; Dial v. Collins, 40 T., 367; Long v. Garnett, 45 T., 400;

right. The statute required his creditor to sue him in his own county. That county is Colorado, not diminished in extent by the void act in review. Hence we perceive that Ward territory is not his true civil division, not his forum, not even a constitutional entity. It is admitted by all the learned counsel who have argued the question arising that though one hundred competent men residing within the proper area concur in the voluntary abandonment of the rights and immunities resulting from an integral and fully represented county in order to enjoy them in restricted degree and different circumstances, it can not affect another man residing in the same space; and that if the act thus obtained does so affect him, this alone determines its invalidity.

For these six reasons, with others that might be offered, I feel constrained to declare my utter inability to entertain for a moment the argument, that the concluding clause of the first provision in review qualifies only the case or epoch of the section. I can not hesitate as to the entire meaning of the section and its full scope, nor can I perceive how a doubt can be held about it. But in making this conscientious declaration, I feel the most unfeigned conviction that not only a doubt may arise in another's mind with equal conscientiousness, but a different conclusion attained. I forget not the established principle of construction of a constitutional provision, that upon a reasonable doubt whether the legislation under it accords, the latter is to be supported as being compatible with the former; a principle resting on the respectful confidence to be reposed in the probity and wisdom of a co-ordinate branch of the government acting under the same solemn sanctions. But when the conviction is clear, as is mine, the duty to condemn the unwarranted legislation is imperious. The obligation of allegiance is to support the constitutive law; and that obligation is rendered eminently imperative upon this court, the last and special depository of the charter of the nation's conventional will, and its peculiar guardian against all infraction.

2. I now come to the question whether the statute before us is such an exertion of the *political* power of the legislative as excludes the judicial scrutiny and authority of the government. The immediate etymon of *political* is *politics,* which is the art and science of government; the regulation of man in his relations to the State; the theory and practice of obtaining the ends of civil society as perfectly as possible. In common speech and sense we mean by the politics of a country the course of its government in its internal and external relations, more especially the external or international; so that in its comprehensive acceptation it embraces every subject of positive law. In this last sense the act

Morehead v. I. & G. N. Ry. Co., 46 T., 178; G. C. & S. F. Ry. Co. v. James. 73 T., 12; Hamilton v. Prescott, 73 T., 565; Schintz v. Morris, 13 T. C. A., 580; Hume v. Schintz, 16 T. C. A., 512; Lay v. Bellinger, 1 App. C., sec. 23. (m) Setting aside order discharging guardian. Lehman v. Gajusky, 75 Texas, 566. But may appeal from denial of motion to set aside appointment. Arthur v. Read, 26 T. C. A., 574. Adoption of the common law by the Act of January 20, 1840 (Gammel's Laws of Texas, vol. 2, p. 177), brought with it the writ of error. Bailey v. Haddy, Dal., 376; Moore v. Harris, 1 T., 36. With us it is not the institution of a new suit but only a mode of appeal. Creek v. Rogers, 1 T., 440; Smith v. Gerlach, 2 T., 424; Luckett v. Townsend, 3 T., 119; Lacey v.
(479)

before us is a political act, as is every other act of the Legislature either with or without the concurrence of the executive, and every act of the executive in the view of what is the course of the government. But when we proceed to ascertain the essential nature of a legislative act and its concord with the Constitution, it is quite plain that this cognovit can afford no possible criterion—none conceivable! Names that represent things truly become their proper representatives and there is substance in them. Names that do not import the nature and essence of things exactly are ever delusive. They may be false simply when not producing vicious effects, fraudulently false when fraught with mischief, and in the worst degree, criminally false. In every way they are unfit for human use. "Call a spade a spade."

What is the Constitution? It is the basis on which the government rests—the authority for all law—and is the commission under which the Legislature, the executive, and the judiciary act. It is permanent and not influenced by the temper of the times. Whatever the collisions of opposite interests, the virulence of parties and the conspiracies of corruption, public robbery and treason, it continues like the Himalaya or the Andes, amidst and above the storm,—the nation's destiny dependent upon its subsistence. If a legislative act impugn its principles, the act must yield; and whenever it is brought before the court it must be declared void. Nay, the act is inherently nothing. 2 Dall., 304; 1 Cran., 175.

Its grand objects were to establish, organize and sustain a government of three co-ordinate, independent branches, each acting within a defined and fixed sphere; but the exertion of their respective powers, whether on one and the same or separate subjects, always to concentrate to the beneficial ends of national security and civil liberty; the first branch to legislate, the second to approve, and as chief magistrate to execute in general the acts of the first branch and conduct the government during its recesses; and the third in the last resort to expound and enforce the laws in every detail and particular of violated public and private right. And the Constitution, like the sun in the center of the solar system, was to hold all the planets within their orbits, sustain and vivify them, and shine equally on the inhabitants of each. This general principle may be found in Fairfax v. Hunter, Wheat., 304. In Wilkinson v. Leland it was asserted to an attentive world that no government could be scarcely deemed free when the rights of the people were left solely dependent on the will of the legislative body without any restraint. 2 Pet., 657. I am fully warranted, from these and other numerous expositions of a Constitution from which ours is mainly copied,

---

Ashe, 21 T., 394; Rodgers v. Alexander, 35 T., 116; Hart v. Mills, 38 T., 513; Magee v. Chadoin, 44 T., 488; Harle v. Langdon, 60 T., 555; Moore v. Moore, 67 T., 293; T. T. Ry. Co. v. Jackson, 85 T., 605; G. H. & W. Ry. Co. v. Lacy, 7 T. C. A., 63; Hart v. State, 13 T. App., 555.